Mary Jane **CURRAN**, as Personal Representative of the Estate of Thomas Edward Curran, Jr., Deceased, Plaintiff,

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant.**

Civ. No. A74-152.

United States District Court,
D. Alaska.

May 14, 1975.

Robert M. Libbey, Anchorage, Alaska, for plaintiff.

David H. Thorsness, Hughes, Thorsness, Lowe, Gantz & Powell, Anchorage, Alaska, for defendant.

## MEMORANDUM AND ORDER

James A. von der Heydt, Chief Judge.

This declaratory action comes before the court upon cross motions for summary judgment. The case was removed to the district court upon the basis of diversity of citizenship. Under the mandate of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court must apply the law of the forum state. Unfortunately, the courts of Alaska have yet to address the critical question here involved, i. e., whether an insured may "stack" the uninsured motorist's coverage provided him in a single multivehicle policy.

Thomas Curran was a named insured under a comprehensive automobile liability policy issued by Fireman's Fund Insurance Company. On May 31, 1974, an accident occurred while Mr. Curran was driving one of the seven vehicles insured under the aforementioned policy. It has been established that the proximate cause of such accident was the negligence of one Chester Kortas. Further, the record reflects that neither Kortas nor his automobile was insured at the time of the accident. Finally, it has been stipulated that Mr. Curran, who subsequently has died, suffered injuries

evaluated in excess of the $20,000.00 paid thus far by his insurer.

The policy in question, MXP 159–33–90 [1], provided uninsured motorists coverage for Mr. Curran as a named insured. In addition, it provided coverage for his spouse and relatives while residents of the household of the named insured. Further, under the omnibus clause, the policy provided uninsured motorists coverage for any other person while occupying an insured highway vehicle. Exclusion (b), the other owned but uninsured vehicle clause, provides that the insurance shall not apply to an injury that occurs while an insured is occupying a highway vehicle, other than an insured highway vehicle, owned by the named insured or any relative resident in the same household as the named insured. An insured highway vehicle is defined as a vehicle described in the schedule as an insured highway vehicle to which bodily injury liability coverage applies.

The policy contains a standard limits of liability clause. The clause is set out in footnote one. The limits of liability schedule provides $15/30$ coverage. The uninsured motorists endorsements were apparently purchased at the rate of six dollars per annum for the first vehicle and five dollars per annum for each additional vehicle. There is some dispute as to the amount charged for the first vehicle, but the court finds that to be immaterial to the resolution of the question of law involved.

As stated earlier, the courts of Alaska have yet to resolve the precise issue raised in the instant case. However, both this court [2] and the Alaska Su-

---

1. The relevant parts of the policy are as follows:

SCHEDULE

| COVERAGE | LIMITS OF LIABILITY | ADVANCE PREMIUM |
|---|---|---|
| | $15,000 each person | |
| U. Uninsured motorists | $30,000 each accident | $Included |

UNINSURED MOTORISTS INSURANCE

I. COVERAGE U—UNINSURED MOTORISTS

(Damages for Bodily Injury).

The Company will pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership maintenance or use of such *uninsured highway vehicle; provided*, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration.

*Exclusions*

This insurance does not apply . . .

(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through be-

ing struck by such a vehicle, but this exclusion does not apply to the named insured or his relatives while occupying or if struck by a highway vehicle owned by a designated insured or his relatives; . . .

II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and . . .

III. LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, the Company's liability is limited as follows:

(a) The limit of liability stated in the schedule as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person," the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the Company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

. . . "insured highway vehicle" means a highway vehicle:

(a) described in the schedule as an insured highway vehicle to which the bodily injury liability coverage of the policy applies; . . .

2. Kackman v. Continental Ins. Co., 319 F. Supp. 540 (D.Alaska 1970).

preme Court [3] have allowed stacking in the multipolicy situation with respect to uninsured motorists insurance. As to the question of whether stacking will be allowed in a single multivehicle policy, it appears that the reported decisions are divided.[4]

There are a number of arguments advanced by the proponents of stacking in the single policy context. It has been argued, in some instances, that the policy in question is ambiguous and should therefore be construed against the insurer. In other cases the courts have held that it would be incongruous to allow stacking in the situation of multiple policies issued by one insurer but not to allow stacking where the same coverage is provided in the form of a multivehicle policy. A third argument has been that stacking is required by the particular language of the uninsured motorists statute at issue. Finally, a number of decisions have allowed stacking where to do otherwise would result in a windfall to the insurer since no consideration given by the insurer exists for the premiums paid on multiple vehicles.

This court finds that the Supreme Court of Texas effectively rebutted each of the aforementioned arguments, with the exception of the third, in Westchester Fire Insurance Company v. Tucker, 512 S.W.2d 679 (1974).

With respect to the third argument, that is, that stacking is required to comply with the terms of the uninsured motorists statute involved, it is sufficient to say that the Alaska statute, A.S. 21.89.020, does not require such a result. This conclusion follows from the fact that uninsured motorists insurance may be waived in Alaska. Werley v. United Services Automobile Association, 498 P.2d 112, 115 (Alaska 1972), recognizes the implications of the statutory waiver concept in an analogous situation.[5]

Although this court is in complete agreement with the decision in Westchester Fire Insurance Company v. Tucker, 512 S.W.2d 679, *supra*, the rationale of that decision is inapplicable to the policy here involved. One of the basic premises of that opinion was that the insured received consideration in the form of expanded coverage for the additional premium dollars he was required to pay for uninsured motorist coverage when multiple vehicles were covered by the policy. Specifically, the named insured and resident members of his family would be covered by uninsured motorists coverage when driving all vehicles owned by them. If uninsured motorists endorsements had not been purchased on such automobiles, Exclusion (a) of the policy there at issue would have barred

---

3. Werley v. United Services Automobile Association, 498 P.2d 112 (Alaska.1972).

4. Some courts have allowed stacking in the single multi-vehicle policy situation, *see*, *e. g.*, Cunningham v. Insurance Company of North America, 213 Va. 72, 189 S.E.2d 832 (1972) ; Sturdy v. Allied Mutual Insurance Company, 203 Kan. 783, 457 P.2d 34 (1969) ; Tucker v. Government Employees Insurance Co., 288 So.2d 238 (Fla.1973) ; Employers Liability Assurance Corporation v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972) ; Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App.1974), writ denied, 302 So.2d 306, 302 So.2d 308 (1974) ; Moomaw v. State Farm Mutual Automobile Insurance Co., 379 F.Supp. 697 (S.D.W. Va.1974), while others have not, Westchester Fire Insurance Company v. Tucker, 512 S.W.2d 679 (Tex.1974) ; Allstate Insurance Company v. Schmitka, 12 Cal.App.3d 59, 90

Cal.Rptr. 399 (Ct.App.1970) ; Talbot v. State Farm Mutual Automobile Insurance Company, 291 So.2d 699 (Miss.1974) ; Nationwide Mutual Insurance Company v. Bair, 257 S.C. 551, 186 S.E.2d 410 (1972) ; Kennedy v. American Hardware Mutual Insurance Company, 255 Or. 425, 467 P.2d 963 (1970) ; Otto v. Allstate Insurance Company, 2 Ill.App.3d 58, 275 N.E.2d 766 (Ct.App. 1971) ; Arminski v. United States Fidelity and Guaranty Company, 23 Mich.App. 352, 178 N.W.2d 497 (Ct.App.1970).

5. The Alaska statute, A.S. 21.89.020 is unlike LSA–R.S. 22:1406. In Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App.1974), the Third Circuit Court of Appeals allowed stacking on the basis of the statutory language at issue. That opinion appears correct on the language there involved.

recovery. Moreover, the additional premium dollars award benefit to the insured under the omnibus clause of the policy. That is, persons occupying a vehicle owned by the insured, other than the named insured or any relative, would only be covered by the uninsured motorists protection if the additional vehicles were insured.[6]

However, the policy involved in the instant case differs from that which was involved in *Westchester* in one important respect. The policy here at issue defines an insured highway vehicle as a highway vehicle described in the schedule as an insured highway vehicle to which *bodily injury liability coverage*[7] of the policy applies. Tieing this definition to Exclusion (b)[8] it becomes apparent that the insured, under the interpretation of the contract propounded by the insurer, would receive absolutely no additional coverage for his premium dollars paid for uninsured motorists coverage on vehicles two through seven. That is, the five or six dollars initially paid by the insured for uninsured motorists coverage effectively protected all insureds at all times as long as the highway vehicle had bodily injury liability coverage applicable to it since Exclusion (b) would therefore not apply. All seven vehicles were so covered.[9]

The premiums received by the insurer for uninsured motorists protection in relation to vehicles two through seven are a windfall to the insurer under its interpretation of the contract. Surely, the insured reasonably expected something in return for the premiums paid for the additional uninsured motorists endorsements. The only possible interpretation of the contract that would fulfill the reasonable expectations of a layman, Continental Insurance Company v. Bussell, 498 F.2d 706 (Alaska 1972); Graham v. Rockman, 504 P.2d 1351 (Alaska 1972), is that the uninsured motorists premiums paid in connection with vehicles two through seven were meant to increase the amount of coverage, the limits of liability clause notwithstanding.[10]

Accordingly, it is ordered:

1. That plaintiff's motion for summary judgment is granted.

2. That counsel for plaintiff forthwith submit an appropriate judgment form.

---

6. An insured automobile was defined in that policy as (a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded.

7. It is apparent from a reading of policy MXP 159–33–90 that bodily injury liability coverage, coverage C, was not meant to include uninsured motorists insurance, coverage U, within its meaning.

8. See footnote 1, *supra*.

9. It can be argued that this is an overly technical construction of the contract. However, after all, the contract was drafted by the insurer.

10. The language of a policy need not be ambiguous in order to interpret it in accordance with the reasonable expectations of a layman. Continental Insurance Company v. Bussell, 498 P.2d 706, *supra*; Graham v. Rockman, 504 P.2d 1351, *supra*.