**FIREMAN'S FUND INSURANCE COMPANIES, Plaintiff,**

v.

Anthony CHAPMAN, Defendant.

**No. A84–518 Civ.**

United States District Court,
D. Alaska,
Civil Division.

Aug. 3, 1987.

* Hon. Robert Boochever, United States Court of Appeals for the Ninth Circuit, sitting by designa-

Robert L. Richmond, Daniel T. Quinn, Richmond & Associates, Anchorage, Alaska, for plaintiff.

Robert B. Mason, Robert B. Mason & Assocs., Anchorage, Alaska, for defendant.

OPINION

BOOCHEVER, Circuit Judge *.

The parties have filed cross motions for summary judgment. At issue is whether Fireman's Fund Insurance Cos. (Fireman's Fund) is liable to Anthony Chapman under an uninsured motorist policy issued to Chapman's grandfather, William Bulen.

William Bulen obtained an insurance policy from Fireman's Fund that included uninsured motorist coverage for 13 vehicles. A separate premium was paid for each of the vehicles. One of the vehicles, while driven by William Bulen, was struck by a vehicle

tion.

owned by Michael Moxey and driven negligently by George Stillwell. As a result of the collision, William Bulen's father, Edwin Bulen, was killed. William and his grandson were injured. Moxey's insurer, Dairyland Insurance Co., paid to those injured and to the estate of those killed in the accident, including the Bulens and Chapman, the total amount available under its policy, $25,000 per person, $50,000 per accident.[1]

Based on diversity jurisdiction, 28 U.S.C. § 1332, Fireman's Fund seeks a declaratory judgment that it is not liable to Chapman under the Bulen policy because its policy only applies when the insured is injured by one with less liability insurance than that provided by Fireman's Fund policy. It argues that its single policy limit of $50,000 per accident is equivalent to Dairyland's limits of $25,000 per person, $50,000 per accident. Chapman filed a cross motion for summary judgment, disputing the contention that the limits of the individual policies are identical. Moreover, Chapman asserts that the underinsured motorist coverage for the 13 vehicles insured by Fireman's Fund may be "stacked," creating a policy limit of $650,000 per accident ($50,000 per vehicle x 13 vehicles) because separate premiums were paid for each vehicle.

Moxey's policy with Dairyland Insurance Co. provided limits of $25,000 per person and $50,000 per accident. The Fireman's Fund policy had a single limit of $50,000. The Fireman's Fund policy provided for uninsured motorist vehicle coverage as follows:

3. *"Uninsured motor vehicle"* means a land motor vehicle or trailer:

a. For which no liability bond or policy at the time of an *accident* provides at least the amounts required by the applicable law where a covered *auto* is principally garaged, or

b. For which the sum of all liability bonds or policies at the time of an *accident* provides at least the amount required by the applicable law where a

covered *auto* is principally garaged, but their limits are less than the limit of this insurance....

Policy at 4 (emphasis in original).

█ It seems obvious that a limit of $25,000 per person is less than a limit of $50,000 per person, even though the maximum limits of both policies irrespective of stacking are $50,000.00. If one person's damages exceed $25,000 and total damages from the accident do not exceed $50,000, that person would have total coverage under Fireman's Fund's policy but not under Dairyland's. Because the coverage of Moxey's policy is less than that of Bulen's, the uninsured motorist provisions are applicable.

█ The more difficult question is whether Fireman's Fund's acceptance of premiums for uninsured motorist coverage on all 13 vehicles justifies stacking so that the total coverage is $650,000. In a diversity case such as this, the court looks to the law of Alaska, the forum state. In *Curran v. Fireman's Fund Ins. Co.*, 393 F.Supp. 712 (D.Alaska 1975), this court held that Alaska law permits stacking when separate premiums are paid for each vehicle under a policy covering several vehicles. William Bulen's policy, however, contained the following limit on liability, which differs significantly from the one in the policy litigated in *Curran:*

1. Regardless of the number of *covered autos,* insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

The most we will pay for all damages resulting from *bodily injury to any one person caused by any one accident* is the limit shown in the Declarations for "each person." Subject to the limit for "each person," the most we will pay for all damages resulting from *bodily injury caused by any one accident is the limit shown in the Declarations for each accident."*

Policy at 5 (emphasis supplied by court). Bulen argues that this clause conflicts with

---

1. Chapman received $10,493.75. Neither party informed the court who received the remaining $39,506.25 or how it was distributed.

the coverage indicated in the "Declarations" section of the policy and that the ambiguity should be resolved in favor of the insured. The declarations indicate that "owned autos only" are covered. That phrase is defined as "only those autos you own" including autos acquired after the policy begins. Other definitions refer to "specifically described autos." Because the policy affords uninsured motorist coverage to all owned autos upon the payment of a single premium, Bulen argues that without stacking, he received no additional benefit for the additional premiums paid for each listed vehicle. As a result, he contends that he had a reasonable expectation that the limits could be stacked. The *Curran* decision was based on this reasoning, but the limiting language of Bulen's policy was not contained in the *Curran* policy. That provision makes it clear that the policy limits are not to be multiplied by the number of vehicles covered. There is certainly additional risk in providing uninsured motorist coverage for a fleet of vehicles over the risk of providing such coverage for one. The limitations clause clearly limits the coverage to the limit shown for each accident, "[r]egardless of the number of covered autos." In view of that clause, I do not believe an insured could reasonably expect that the limits would be stacked. This decision, of course, does not involve construction of multiple policies. *See Werley v. United Services Automobile Association,* 498 P.2d 112 (Alaska 1972).

Among the cases supporting this decision is *Goodville Mutual Casualty Co. v. Borror,* 221 Va. 967, 275 S.E.2d 625 (1981), in which the Virginia Supreme Court considered a similar insurance policy. Like the *Curran* case, Virginia had approved stacking of uninsured motorist coverage where separate premiums were paid for multiple vehicle coverage under a single policy. *See Cunningham v. Insurance Co. of North America,* 213 Va. 72, 189 S.E.2d 832 (1972); *Lipscombe v. Security Insurance Co.,* 213 Va. 81, 189 S.E.2d 320 (1972). Those cases were distinguished on the grounds that the *Goodville* policy contained an express limitation of liability similar to the clause in Bulen's policy. The court found the language to be clear and unambiguous and held that stacking was impermissible. *See also Hamilton v. Travelers Indemnity Company,* 77 N.C.App. 318, 335 S.E.2d 228, 231–32 (1985); *Constant v. Amica Mutual Insurance Co.,* 497 A.2d 343 (R.I.1985) (similar application of limitation clauses after prior decisions had approved stacking); Comment, *Intrapolicy Stacking of Uninsured Motorist and Medical Payments Coverage: To Be or Not To Be,* 22 S.D.L.Rev. 349, 366–68 (1977). I conclude that language of the limitation clause removes any ambiguity and that the policy limit of $50,000 may not be stacked.

Fireman's Fund is entitled to a declaratory judgment that the policy limit is $50,000 and not $650,000. Chapman's cross motion for summary judgment is granted to the extent that it sought a determination that Bulen's policy with a limit of $50,000 per accident provided more coverage than Moxey's policy with limits of $25,000 per person and $50,000 per accident. Each side shall bear its own costs and attorneys' fees.