SHERRY S. SUTTON v. THE AETNA CASUALTY & SURETY COMPANY

No. 539PA88

(Filed 6 September 1989)

1. **Insurance § 69.1— underinsured motorist coverage—statute prevails over policy terms**

    The North Carolina statute which provides for stacking or aggregation of underinsured motorist coverage (UIM), N.C.G.S. § 20-279.21(b)(4), prevails over language in the policy; furthermore, the statute requires that the underinsured motorist coverages for each vehicle in a single policy and all such coverages in both policies be aggregated. Interpreting the statute to allow both intrapolicy and interpolicy stacking is consistent with the nature and purpose of the Financial Responsibility Act, which is to compensate innocent victims of financially irresponsible motorists.

    **Am Jur 2d, Automobile Insurance §§ 322, 329.**

2. **Insurance § 69— underinsured motorist coverage never excess or additional coverage**

    Underinsured motorist coverage can never be excess or additional coverage within the meaning of N.C.G.S. § 20-279.21(g), which would exclude it from statutory provisions, because a

SUTTON v. AETNA CASUALTY & SURETY CO.

[325 N.C. 259 (1989)]

tortfeasor who has at least some liability insurance must always have at least the minimum amount, so that UIM coverage is available only in amounts which exceed the minimum. Since the UIM coverage in any given policy must always equal the policy's basic liability coverage and that coverage must always exceed the minimum mandatory amount, there can never be any excess or additional UIM coverage as contemplated by N.C.G.S. § 20-279.21(g).

**Am Jur 2d, Automobile Insurance §§ 322, 329.**

3. **Insurance § 69— underinsured motorist coverage—statutory terms controlling**

Defendant's argument that UIM coverage is not required by the Financial Responsibility Act since it may be rejected by the insured, and that the terms of UIM are therefore controlled by the parties and the contract rather than the Act, was rejected because the provisions governing aggregation of UIM coverages in N.C.G.S. § 20-279.21(b)(4) would otherwise be written out of the Financial Responsibility Act and rendered useless and redundant.

**Am Jur 2d, Automobile Insurance §§ 322, 329.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to a determination by the Court of Appeals of a declaratory judgment for defendant entered by *Llewellyn, J.*, at the 6 August 1988 Session of Superior Court in NEW HANOVER County. Heard in the Supreme Court on 14 March 1989.

*Yow, Yow, Culbreth, Fox & Pennington, by Stephen E. Culbreth and Ralph S. Pennington, for plaintiff appellant.*

*Marshall, Williams, Gorham & Brawley, by Ronald H. Woodruff, for defendant appellee.*

EXUM, Chief Justice.

The question presented is what is the effect, if any, of N.C.G.S. § 20-279.21(b)(4) on an insurer's obligation to aggregate, or stack, underinsured motorist (UIM) coverages for several vehicles all contained within a single automobile insurance policy.

Plaintiff seeks a declaratory judgment that defendant is obligated to stack the limits of liability of UIM coverages for each

**SUTTON v. AETNA CASUALTY & SURETY CO.**

[325 N.C. 259 (1989)]

of four separate vehicles listed in two separate policies issued by defendant and upon which plaintiff has paid a separate premium for each coverage. The trial court awarded judgment for defendant. It ruled:

> The Plaintiff is not entitled to aggregate or stack underinsured coverage provided in the policies of insurance issued by the Defendant to the Plaintiff based on the number of vehicles listed in each policy. The limit of liability for such underinsured coverage for any one person is established by the terms of the applicable policies without regard to the number of vehicles listed in said policies or the premiums paid on said policies.

On discretionary review in this Court, plaintiff contends the trial court erred in holding she was not entitled to stack, or aggregate, separate UIM coverages, for each of which she had paid a separate and distinct premium, on the ground the coverages were contained in a single policy. We agree and reverse the judgment of the trial court.

## I.

The parties stipulated to these facts: Defendant issued two policies of insurance to plaintiff. The policies were numbered 225SX10699637PCA (Policy A) and 225SX17972951PCA (Policy B). In addition to basic bodily injury liability coverage of $50,000 per person for each of two vehicles, a Buick Regal and a Chevrolet Camaro, Policy A provided $50,000 per person UIM bodily injury coverage on each of these vehicles. The premium charged for this UIM coverage was $3.00 per vehicle. In addition to basic bodily injury liability coverage of $100,000 per person for each of two vehicles, a Chevrolet pickup truck and a Plymouth, Policy B provided $100,000 per person UIM bodily injury coverage on each of these vehicles. The premium charged for this UIM coverage was $6.00 for the Plymouth and $3.00 for the pickup truck.

As we understand the stipulations both Policy A and Policy B contained the following provision:

> *The limit of bodily injury liability shown in the Declarations for "each person", for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident.* Subject to this limit for "each person" the limit of bodily injury liability shown in the Declarations for "each accident" for Uninsured

SUTTON v. AETNA CASUALTY & SURETY CO.

[325 N.C. 259 (1989)]

Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. The limit of property damage liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages to all property resulting from any one accident. *This is the most we will pay for bodily injury and property damage regardless of the number of*:

1. **Covered persons;**

2. Claims made;

3. *Vehicles or premiums shown in the Declarations*; or

4. Vehicles involved in the accident.

On 31 May 1986 plaintiff was involved in an automobile accident when the vehicle she was operating was struck by a vehicle operated by Anthony V. Genesio, deceased. Plaintiff filed suit against the estate of Genesio seeking compensatory damages. The Genesio vehicle was insured by Nationwide Insurance Company (Nationwide) and had automobile personal injury liability limits of $50,000 per person. Nationwide petitioned the court for and received authority to pay its entire $50,000 coverage into court for the benefit of plaintiff. With plaintiff alleging in excess of $70,000 in medical expenses and the inability to return to her employment, she brought this declaratory judgment action which forms the basis of this appeal.

N.C.G.S. § 279.21(b)(4) of the Motor Vehicle Safety and Financial Responsibility Act of 1953, as amended effective 1 October 1985, provides in relevant part:

In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist *coverages* provided in the owner's policies of insurance; *it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply*, the benefit of all limits of liability of underinsured motorist coverage under all such policies: *Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-131.36(9) and (10).*

[Emphasis supplied.]

SUTTON v. AETNA CASUALTY & SURETY CO.

[325 N.C. 259 (1989)]

Plaintiff contends her policies provide a limit of UIM coverage totaling $300,000. Her argument is that N.C.G.S. § 279.21(b)(4) controls and that it requires that she be permitted to stack, or aggregate, the UIM coverages for each vehicle in both policies. The result under this position would be that she is entitled to $50,000 UIM coverage for each of the two vehicles for which this coverage is provided in Policy A and to $100,000 UIM coverage for each of the two vehicles for which this coverage is provided in Policy B. Thus Policy A would provide $100,000 UIM coverage and Policy B, $200,000 UIM coverage.

The questions before us are first, whether the statute prevails over the policy language and second, if it does, whether the statute should be interpreted as plaintiff contends.

II.

[1] We are confident the statute prevails over the language of the policy.

This Court has established the principle that when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute will prevail. *Insurance Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977); *see, e.g., Insurance Co. v. Casualty Co.*, 283 N.C. 87, 91, 194 S.E.2d 834, 837 (1973).

We conclude further that the statute, as plaintiff contends, requires that the UIM coverages for each vehicle in a single policy and all such coverages in both policies be aggregated.

UIM insurance in North Carolina is an outgrowth from and development of uninsured motorist insurance. J. Snyder, Jr., *N.C. Automobile Insurance Law*, § 30-1 (1988). Uninsured motorist insurance allows a recovery for an injured party where a tortfeasor has no liability insurance. *Id.* By comparison, UIM coverage allows the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate fully the injured party. *Id.* N.C.G.S. § 20-279.21(b)(4) requires that policies of automobile liability insurance which are written at limits that exceed minimum statutory limits and which afford uninsured motorist coverage must provide UIM coverage unless "any insured named

in the policy rejects the" UIM coverage.[1] This provision also requires that UIM coverage must be in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy. N.C.G.S. § 20-279.21(b)(4) (1983 & Cum. Supp. 1988).

Though this Court has never addressed the issue, there has been considerable litigation in other jurisdictions involving the question of whether an insured should be allowed intrapolicy stacking of *uninsured* motorist coverages. *See* J. Snyder, Jr., *N.C. Automobile Insurance Law* § 33-1 (1988); 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 40.1 (2d ed. 1987); Annot. "Combining or 'Stacking' Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured," 23 A.L.R. 4th 12 (1983). Given the close relationship between *uninsured* and *underinsured* coverages the principles applicable to *uninsured* motorist intrapolicy stacking should be equally applicable to factual situations giving rise to *underinsured* intrapolicy stacking questions. *See* J. Snyder, Jr., *N.C. Automobile Insurance Law* § 33-1 (1988); 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 40.1 (2d ed. 1987). The question of the validity of intrapolicy stacking of uninsured motorist coverages is "unsettled." Annot. "Combining or 'Stacking' Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured," 23 A.L.R. 4th 12 (1983). In determining whether intrapolicy stacking should be allowed courts have considered a variety of factors including: The requirements of state statutes; the policy language; and the payment of separate premiums. Annot. "Combining or 'Stacking' Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured," 23 A.L.R. 4th 12, 16 (1983). In general, the determination of this issue "requires a close examination of case law, statutory provisions, and applicable insurance clauses." J. Snyder, Jr., *N.C. Automobile Insurance Law* § 33-1 (1988).

---

1. The statute mandates the following minimum limits of liability coverage: $25,000 because of bodily injury to or death of one person in any one accident; $50,000 because of bodily injury to or death of two or more persons in any one accident; and $10,000 because of injury to or destruction of property of others in any one accident. N.C.G.S. § 20-279.21(b)(2) (1983 & Cum. Supp. 1988). In addition, the statute likewise requires that uninsured motorist coverage must be provided in the minimum amount of $25,000 for bodily injury or death of one person, and $50,000 because of bodily injury to or death of two or more persons in any one accident. *See id.* § 20-279.21(b)(3).

SUTTON v. AETNA CASUALTY & SURETY CO.

[325 N.C. 259 (1989)]

Having concluded that in North Carolina N.C.G.S. § 20-279.21(b)(4) governs the question, we proceed to interpret that provision.

"The cardinal principle of statutory construction is that the intent of the legislature is controlling." *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978); *see, e.g., Insurance Co. v. Chantos*, 293 N.C. at 440, 238 S.E.2d at 603. Legislative intent can be ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other. *See In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978); *see, e.g., Milk Commission v. Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967). "The Court will not adopt an interpretation which results in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act. Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences." *Insurance Co. v. Chantos*, 293 N.C. at 440, 238 S.E.2d at 603 (citations omitted); *accord Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978).

The avowed purpose of the Financial Responsibility Act, of which N.C.G.S. § 20-279.21(b)(4) is a part, is to compensate the innocent victims of financially irresponsible motorists. *American Tours, Inc. v. Liberty Mutual Ins. Co.*, 315 N.C. 341, 346, 338 S.E.2d 92, 96 (1986); *e.g., Insurance Co. v. Chantos*, 293 N.C. at 440, 238 S.E.2d at 604. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished. *Moore v. Insurance Co.*, 270 N.C. 532, 535, 155 S.E.2d 128, 130-31 (1967).

With these principles in mind we conclude the legislature intended N.C.G.S. § 20-279.21(b)(4) to require both interpolicy and intrapolicy stacking of UIM coverages. The statute refers to "coverages provided in the owner's policies of insurance," clearly suggesting the provision was intended to require both the stacking of "coverages" and "policies," or intrapolicy and interpolicy stacking. The next line, however, states: "it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply," suggesting the provision only applies to multiple policies or interpolicy stacking. *See* Note, *Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties*, 64 N.C.L. Rev. 1408, 1417 (1986).

SUTTON v. AETNA CASUALTY & SURETY CO.

[325 N.C. 259 (1989)]

We believe some light on legislative intent is shed by the proviso which states: "Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-131.36(9) and (10)." A fleet policy is a single policy designed to provide coverage for a multiple and changing number of motor vehicles used in an insured's business. *See* 6B J. Appleman, *Insurance Law and Practice* § 4291.5 (1979); *cf.* N.C.G.S. § 58-131.35A (Cum. Supp. 1988) (defining a "Nonfleet" motor vehicle as one "not eligible for classification as a fleet vehicle for the reason that the motor vehicle is one of four or less motor vehicles owned or hired under a long-term contract by the policy named insured). If the paragraph under consideration were intended to require both interpolicy and intrapolicy stacking, an exception for fleet policies would be anticipated. This exception would preclude any argument that UIM limits in a fleet policy were figured by multiplying the UIM coverage by the number of vehicles ordinarily insured in the fleet. This kind of intrapolicy stacking within a fleet policy, where many vehicles are often involved, would give the insured an amount of UIM coverage conceivably far in excess of what either party bargained for.[2] If, on the other hand, the legislature intended to provide for no intrapolicy stacking at all, there would be less need for a fleet policy exception.

It is less reasonable to think that the legislature intended by the proviso to preclude merely the interpolicy stacking of several fleet policies. Since, as with nonfleet policies, one insured is not likely to have more than two or three fleet policies, we can see no reason to distinguish between fleet and nonfleet policies vis-a-vis interpolicy stacking. There is more reason, as we have shown, to distinguish between fleet and nonfleet policies vis-a-vis intrapolicy stacking of coverages.

Interpreting the statute to allow both interpolicy and intrapolicy stacking is consistent with the nature and purpose of the act, which as noted is to compensate innocent victims of financially irresponsible motorists. *Cf.* Note, *Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties*, 64 N.C.L. Rev. 1408, 1417 (1986)

---

2. For example, suppose the insured has a fleet policy which provides coverage for 100 automobiles and contains UIM coverage liability limits of $50,000 per injured person. Without a fleet policy exception, the insured could at least argue that the maximum limit of UIM coverage was 100 × $50,000 or $5,000,000 per person, particularly if the total premium for this coverage was figured by multiplying a base premium by the number of vehicles ordinarily insured in the fleet.

SUTTON v. AETNA CASUALTY & SURETY CO.

[325 N.C. 259 (1989)]

(commenting that "the public policy underlying the statute — to compensate the innocent victim of an accident caused by an uninsured or underinsured motorist — is not served" by construing the statute as only requiring interpolicy stacking). Requiring both interpolicy and intrapolicy stacking enhances the injured party's potential for full recovery of all damages.

Our construction of the statute avoids anomalous results, is fairer to the insured and is consistent with preexisting common law — all of which lead us to believe that it is in keeping with the legislature's intent. Our construction prevents the "anomalous situation that an insured is better off — for purposes of the underinsured motorist coverage — if separate policies were purchased for each vehicle." 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 40.1 (2d ed. 1987); *cf.* Note, *Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties*, 64 N.C.L. Rev. 1408, 1417 (1986) ("Neither logic nor equity supports a denial of stacking on multivehicle policies, while permitting stacking of policies that list only one vehicle."). Our construction also gives the insured due consideration for the separate premiums paid for each UIM coverage within a policy. Finally, our construction is consistent with our preexisting common law by which automobile insurance policies have been construed to require intrapolicy stacking of medical payments coverage, *Woods v. Insurance Co.*, 295 N.C. 500, 509, 246 S.E.2d 773, 779-80 (1978), and uninsured motorist coverage. *Hamilton v. Travelers Indemnity Co.*, 77 N.C. App. 318, 323-24, 335 S.E.2d 228, 232 (1985), *disc. rev. denied*, 315 N.C. 587, 341 S.E.2d 25 (1986).

III.

[2]   Defendant contends that even if N.C.G.S. § 20-279.21(b)(4) requires both intrapolicy and interpolicy stacking, it does not control to the extent the policy coverages at issue exceed the mandatory minimum coverage required by the Financial Responsibility Act. Defendant's argument rests on N.C.G.S. § 20-279.21(g), which provides:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this Article. With respect to a policy which grants such excess or additional

coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

Insofar as UIM coverage is concerned, the question is whether it can ever be "excess or additional coverage" within the meaning of N.C.G.S. § 20-279.21(g). We conclude that it cannot. An owner's policy of liability insurance must, subject to rejection by the insured, provide UIM coverage "only with policies that are written at limits that exceed" minimum statutory limits and that afford uninsured motorist coverage. N.C.G.S. § 20-279.21(b)(4) (1983 & Cum. Supp. 1988). UIM coverage must be in an amount equal to the policy limits for bodily injury liability as specified in the policy. *Id.* Because of these statutory prerequisites for UIM coverage, there can never be excess or additional UIM coverage within the meaning of N.C.G.S. § 20-279.21(g). UIM coverage is designed, as we have already noted, to cover the situation where the tortfeasor has some but not enough liability insurance to compensate the injured party for his full damages. Since a tortfeasor who has at least some liability insurance must always have at least the minimum amount, UIM coverage is available only in amounts which exceed this minimum. Since the UIM coverage in any given policy must always equal the policy's basic liability coverage and that coverage must always exceed the minimum mandatory amount, there can never be any excess or additional UIM coverage as contemplated by N.C.G.S. § 20-279.21(g).

[3] Finally, defendant argues that since any UIM coverage may ultimately be rejected by the insured, it is not required by the Financial Responsibility Act; therefore, the terms of it are controlled by the parties and the insurance contract and not by the act.

We disagree. In construing statutes to give effect to legislative intent, the act must be considered as a whole and none of its provisions should be rendered useless or redundant if they can reasonably be considered as adding something to the act which is in harmony with its purpose. *State v. Harvey*, 281 N.C. 1, 19-20, 187 S.E.2d 706, 718 (1972); *In re Watson*, 273 N.C. 629, 634, 161 S.E.2d 1, 6-7 (1968). If defendant's position were adopted, the provisions governing aggregation of UIM coverages in N.C.G.S. § 20-279.21(b)(4) would be written out of the Financial Responsibility Act and rendered useless and redundant. All UIM coverages

**SUTTON v. AETNA CASUALTY & SURETY CO.**

[325 N.C. 259 (1989)]

would, under defendant's position, be governed by the policy and none by the statute.

We conclude, therefore, that plaintiff is entitled to have all UIM coverages in both policies aggregated. The result is that the total UIM coverage available to plaintiff is $300,000. The decision of the trial court to the contrary is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.