HARRY EUGENE LANNING, EXECUTOR FOR THE ESTATE OF DEBORAH JEAN LANNING; LAWRENCE C. STOKER, ADMINISTRATOR FOR THE ESTATE OF CHERYL ANN MELTON; LINDA DIANE CHRISTOPHER, NATURAL MOTHER AND GUARDIAN AD LITEM OF KELLY PAULA CHRISTOPHER, MINOR CHILD v. ALLSTATE INSURANCE COMPANY

No. 288PA91

(Filed 4 September 1992)

1. **Insurance § 514 (NCI4th)— uninsured motorist coverage— intrapolicy stacking not required by statute**

    N.C.G.S. § 20-279.21(b)(3), prior to its 1991 amendment, did not require an automobile insurer to aggregate or stack its intrapolicy UM coverage provided with respect to each of the vehicles named in the policy.

    **Am Jur 2d, Automobile Insurance § 329.**

    **Combining or "stacking" uninsured motorist coverage provided in fleet policy. 25 ALR4th 896.**

2. **Insurance § 514 (NCI4th)— uninsured motorist coverage— intrapolicy stacking not allowed by policy**

    The language of an automobile policy prohibited intrapolicy stacking of its UM coverages where it provided that "the

LANNING v. ALLSTATE INSURANCE CO.

[332 N.C. 309 (1992)]

limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury . . . regardless of the number of: . . . Insureds; . . . [and] Vehicles or premiums shown in the Declarations."

**Am Jur 2d, Automobile Insurance § 329.**

**Combining or "stacking" uninsured motorist coverage provided in fleet policy. 25 ALR4th 896.**

Justice MEYER concurs in the result.

Justices FRYE and LAKE did not participate in the consideration or decision of this case.

ON petition for discretionary review prior to determination by the Court of Appeals, pursuant to N.C.G.S. § 7A-31, of a summary judgment for defendant on 19 April 1991 by *C. Walter Allen, J.,* in Superior Court, BUNCOMBE County. Heard in the Supreme Court on 16 October 1991 with *Requeno v. Integon General Ins. Corp.,* 332 N.C. 339, 421 S.E.2d 784 (1992), and *Wheeler v. Welch,* 332 N.C. 342, 420 S.E.2d 186 (1992).

*Hyler & Lopez, P.A., by George B. Hyler, Jr. and Robert J. Lopez, for plaintiff-appellants Lanning and Stoker.*

*Lindsay & True, by Ronald C. True, for plaintiff-appellant Christopher.*

*McClure & Contrivo, P.A., by Frank J. Contrivo, for defendant-appellee.*

EXUM, Chief Justice.

This is a declaratory judgment action brought to determine plaintiffs' rights under an automobile insurance policy issued by defendant Allstate Insurance Company (Allstate). At issue is whether N.C.G.S. § 20-279.21 (1989) requires that the UM coverage limits on each of three vehicles insured in the policy be aggregated, or "stacked." If it does not, the next question is whether the nature of the policy itself and the language it employs requires such stacking. We conclude, for the reasons given below, that the answers to both questions are no.

## LANNING v. ALLSTATE INSURANCE CO.

[332 N.C. 309 (1992)]

### I.

The parties have stipulated the facts to be as follows:

Allstate issued an automobile insurance policy to Harry and Deborah Lanning, the named insureds. The policy insured against the Lannings' liability to third parties and provided collision, comprehensive and UM coverage. The declarations page listed three vehicles, two Pontiac Firebirds and a Subaru, for coverage and showed that the liability and UM coverages applied to all three vehicles. The collision and comprehensive coverages applied only to the Pontiacs. As to each of the three vehicles the bodily injury liability and UM coverages were limited to $25,000 per person and $50,000 per accident. Separate premiums were charged with respect to each vehicle for each coverage provided. For the UM coverage the premium was $4 per vehicle.

On 20 January 1989 one of the Pontiacs listed in the Allstate policy, being driven by Ms. Lanning and occupied by her daughter, Cheryl Ann, and a foster child, Kelly, was struck by an uninsured automobile. Ms. Lanning was killed instantly; Cheryl Ann later died from injuries suffered in the collision; and Kelly was seriously injured.

Plaintiffs Harry Lanning, executor of his wife Deborah's estate, Lawrence C. Stoker, administrator of the estate of Cheryl Ann Melton, and Linda Diane Christopher, the natural mother and guardian ad litem of Kelly Christopher, have filed actions in Buncombe County for wrongful death and personal injury damages against the estate of the tortfeasor, who subsequently died due to conditions unrelated to this litigation. Defendant Allstate has offered the sum of $50,000 to be divided between plaintiffs as settlement of plaintiffs' claims against it pursuant to its UM coverage. Allstate contends that $50,000 constitutes the applicable limit of liability per accident under the UM coverage it afforded to the Lannings. On the other hand, plaintiffs have offered to settle for $150,000. Plaintiffs contend that $150,000 represents the applicable limit of liability per accident under Allstate's UM coverage.

In the case before us defendant moved for summary judgment. At the hearing on the motion the parties offered their stipulation of the facts and Allstate's policy of insurance. On 19 April 1991 Judge Allen granted defendant's motion, in effect holding that Allstate was not required to aggregate, or stack, the intrapolicy

LANNING v. ALLSTATE INSURANCE CO.

[332 N.C. 309 (1992)]

UM limits under the policy in question. Pursuant to this ruling Allstate's limit of liability for this accident under its UM coverage was $50,000. We allowed plaintiffs' petition for discretionary review of Judge Allen's ruling prior to determination by the Court of Appeals.

II.

[1] Plaintiffs first contend that N.C.G.S. § 20-279.21 of the Motor Vehicle Safety and Financial Responsibility Act of 1953, as amended effective 1 October 1985 (the Act), and as interpreted by our decision in *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), requires that Allstate aggregate its intrapolicy UM coverage provided with respect to each of the three vehicles named in the policy. We find no such requirement in the Act.

Language in a policy of insurance is the determining factor in resolving coverage questions unless that language is in conflict with applicable statutory provisions governing such coverage. *Sutton*, 325 N.C. 259, 382 S.E.2d 759; *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 238 S.E.2d 597 (1977).

> [W]hen a statute is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written into it, and if the terms of the policy conflict with the statute, the provisions of the statute will prevail.

*Sutton*, 325 N.C. at 263, 382 S.E.2d at 762; *accord Chantos*, 293 N.C. at 441, 238 S.E.2d at 604.

UM insurance is largely governed by subdivision (b)(3) of the Act; whereas UIM insurance is largely governed by subdivision (b)(4). *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991). This distinction is crucial to our holding. Subdivision (b)(3) of the Act provides:

> No policy of bodily injury liability insurance . . . shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from the owners or operators of uninsured motor vehicles and hit-and-run motor vehicles

LANNING v. ALLSTATE INSURANCE CO.

[332 N.C. 309 (1992)]

because of bodily injury, sickness or disease, including death, resulting therefrom; provided, an insured is entitled to secure additional coverage up to the limits of bodily injury liability in the owner's policy of liability insurance that he carries for the protection of third parties. . . . The coverage required under this subdivision shall not be applicable where any insured named in the policy shall reject the coverage. If the named insured rejects the coverage required under this subdivision, the insurer shall not be required to offer the coverage in any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy unless the named insured makes a written request for the coverage.

Beyond the above-cited provisions, subdivision (b)(3) is largely procedural in nature.[1]

On the other hand, subdivision (b)(4) of the Act provides in pertinent part:

[T]he limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance; *it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies: Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance* . . . .

(Emphasis added.) Although this Court has acknowledged that UIM coverage is "an outgrowth from and development of uninsured motorist insurance," *Sutton*, 325 N.C. at 263, 382 S.E.2d at 762 (citing J. Snyder, Jr., *N.C. Automobile Insurance Law*, § 30-1 (1988) ),[2] we must also recognize that there are differences in the

---

1. It should be noted that the Act was amended in July 1991. The 1991 amendments deal specifically with both interpolicy and intrapolicy stacking of UM and UIM coverages. These amendments are inapplicable to claims arising or policies written prior to their enactment. 1991 N.C. Sess. Laws, ch. 646, § 4. Therefore, we are concerned only with the provisions of the Act as amended in 1985 and quoted above.

2. In dicta in *Sutton*, we also stated that "[g]iven the close relationship between *uninsured* and *underinsured* coverages the principles applicable to *uninsured* motorist

**LANNING v. ALLSTATE INSURANCE CO.**

[332 N.C. 309 (1992)]

coverages, as evinced by the General Assembly's use of separate statutory provisions and separate language. *See also Smith*, 328 N.C. at 142, 400 S.E.2d at 47. "The cardinal principle of statutory construction is that the intent *of the Legislature* is controlling." *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (quoting *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978) ) (emphasis added).

In *Sutton*, we held that the language quoted above in subdivision (b)(4) explicitly mandates intrapolicy and interpolicy stacking of UIM coverages for the benefit of an injured policy owner. The General Assembly, however, has never included in subdivision (b)(3) language similar to that in subdivision (b)(4). Subdivision (b)(3) is in fact silent on the issue of stacking coverages. Our decision in *Sutton*, consequently, is not controlling on the issue presented here.

Plaintiffs also argue that, because subdivision (b)(4) explicitly incorporates the provisions of subdivision (b)(3), subdivision (b)(3) in turn incorporates the provisions and, therefore, the requirements of (b)(4). Because (b)(4) requires both interpolicy and intrapolicy stacking, plaintiffs argue (b)(3) does, too. Plaintiffs are relying on the following language of subdivision (b)(4): "The provisions of subdivision (b)(3) . . . shall apply to the coverage required by this subdivision." This language apparently incorporates the provisions of (b)(3) into those of (b)(4). There is, however, no similar language in the Act incorporating the provisions of (b)(4) into those of (b)(3). A fair reading of the Act compels us to conclude that the legislature intended the provisions of (b)(3) to be incorporated into (b)(4) but did not intend the provisions of (b)(4) to be incorporated into those of (b)(3). Plaintiffs' argument to the contrary must fail.

Plaintiffs further contend that our decision in *Moore v. Hartford Fire Ins. Co. Group*, 270 N.C. 532, 155 S.E.2d 128 (1967), interpreted the Act to require interpolicy stacking of UM coverages. From this contention plaintiffs argue that if the Act requires interpolicy stacking of UM coverages, it follows logically that it requires intrapolicy stacking. We do not agree that *Moore* interpreted the Act to require interpolicy stacking of UM coverages.

In *Moore* plaintiff's intestate was killed and two others were injured when their vehicle was struck by a vehicle being negligently

intrapolicy stacking should be equally applicable to factual situations giving rise to *underinsured* intrapolicy stacking questions. *Id.* at 264, 382 S.E.2d at 762 (emphasis in original).

## LANNING v. ALLSTATE INSURANCE CO.

[332 N.C. 309 (1992)]

operated by an uninsured motorist. The vehicle in which they were traveling was owned by the intestate's husband's employer and was being operated by the husband. The employer's auto liability policy purchased from the Insurance Company of North America (INA), provided minimum limits UM coverage. INA paid out the limits of its UM coverage to the plaintiff administrator and the two injured persons. Plaintiff's intestate was also afforded minimum limits UM coverage under an automobile liability policy written by Hartford on an automobile owned by the husband. Hartford attempted to avoid liability under its UM coverage pursuant to an "Other Insurance" clause contained in its policy. The clause read:

> 6. Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance.

The *Moore* Court concluded that, notwithstanding this language, subdivision (b)(3) of the Act entitled plaintiff's intestate to Hartford's minimum limits UM coverage.

The decision in *Moore*, however, did not rest on the notion that *the Act* required the UM coverages in the two different policies to be aggregated or stacked. It rested, instead, on the proposition that the Act required UM coverage to be written at certain minimum limits, a requirement which the insurer could not abrogate by policy language. The minimum limits provision of subdivision (b)(3) in the Act when *Moore* was decided required that "[n]o policy of bodily injury liability insurance . . . shall be . . . issued for delivery in this State . . . unless coverage is provided therein . . . in limits for bodily injury or death set forth in subsection (c) of § 20-279.5 . . . ." At the time, subsection (c) of § 20-279.5 required that each policy provide a limit of liability for UM insurance of $5,000 per person. The *Moore* Court held that Hartford could not abrogate the per policy minimum limits requirement by the use of the "Other Insurance" clause. Former Chief Justice Parker in his opinion for the Court stated:

> [Subdivision (b)(3)] provides for a limited type of compulsory automobile liability coverage against uninsured motorists. It

> requires coverage for bodily injury or death caused by an uninsured motorist to the extent of $5,000 for one person. It does not permit "other insurance" clauses in the policy which are contrary to the statutory limited amount of coverage. . . . It seems clear that our statute does not limit an insured only to one $5,000 recovery under said coverage where his loss . . . is greater than $5,000, and he is the beneficiary of more than one policy . . . .

*Id.* at 543, 155 S.E.2d at 136. The Court thus concluded that the Act required that the Hartford policy provide minimum limits UM coverage. Finding that the Act did not prohibit the beneficiary of more than one policy from recovering under all such policies, the Court concluded the UM coverages under both policies at issue were available to plaintiff's intestate.

The Allstate policy at issue here contained UM coverage written in an amount equal to the current minimum limits as required by the Act ($25,000 per person and $50,000 per accident). There is no "Other Insurance" clause in this policy purporting to abrogate the minimum limits requirements of the Act, as there was in *Moore.* Even without stacking, the UM coverage provided to the insureds under the Allstate policy plainly satisfies the minimum limits requirements of (b)(3) and our decision in *Moore. Moore,* therefore, is inapplicable to the issue before us.

## III.

[2]     The next issue is whether the language in Allstate's policy entitles the plaintiffs to stack the UM coverages provided for each of the three vehicles. We conclude that it does not.

While, as we have held above, the Act does not require intrapolicy stacking of UM coverages, neither does it prohibit such stacking.[3] When policies written before the 1991 amendments to the Act[4] contain language that may be interpreted to allow stacking of UM coverages on more than one vehicle in a single policy, insureds are contractually entitled to stack. *See Smith v. Nation-*

---

3. As previously noted in footnote 1, *supra,* our concern in the present case is only with the provisions of the Act prior to the 1991 amendments. We are not called upon, nor do we, hazard an interpretation of the effect of the Act's revised provisions enacted in 1991.

4. See n.3, *supra.*

LANNING v. ALLSTATE INSURANCE CO.

[332 N.C. 309 (1992)]

*wide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44; (UIM coverages); *see also Woods v. Nationwide Mutual Insurance Co.*, 295 N.C. 500, 246 S.E.2d 773 (1978) (medical pay coverages).

In *Woods*, we stated that:

> The various terms of [an insurance] policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. *Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written*; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Woods*, 295 N.C. at 506, 246 S.E.2d at 777 (emphasis added).

We believe that the language in Allstate's policy is clear, and capable of but one reasonable interpretation: that being that the policy prohibits intrapolicy stacking of its UM coverages. In pertinent part, under a section of Allstate's policy entitled "Limits of Liability," the policy states:

> The limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of service or death, sustained by any one person in any one auto accident. Subject to the limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. . . . This is the most we will pay for **bodily injury** . . . regardless of the number of:
>
> 1. **Insureds**;
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Declarations; or
>
> 4. Vehicles involved in the accident.

(Emphasis in original.)

Although the *Woods* Court unanimously found that intrapolicy stacking of medical payments coverage under an automobile liability policy was allowed where various terms of the policy were ambiguous with respect to stacking, that case is easily distinguishable from the case before us. In *Woods*, we found a "per accident" limitation in the policy to be ambiguous because it contrasted with other policy language that stated the coverages shown would "apply separately" to each of the vehicles listed. The Court said, "Absent express language in the policy that the 'per accident' limitation applies without regard to the number of vehicles covered by the policy, the ambiguity must be resolved against the insurer . . . ." *Id.* at 509, 246 S.E.2d at 779. Unlike the Allstate policy here, the *Woods* policy failed to state explicitly that the "per accident" limitation contained in the policy applied regardless of the number of vehicles listed in the policy.

The Allstate policy, however, contains language very similar to that contemplated in *Woods*. The policy, as we have shown, states that the "limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury . . . *regardless of the number of:* . . . *Insureds*; . . . [and] *Vehicles or premiums shown in the Declarations.* . . ." (Emphasis added.) This language plainly distinguishes *Woods*. The language used in the Allstate policy is not ambiguous.

We agree with two decisions of our Court of Appeals, both of which found that similar "Limits of Liability" language contained in automobile liability policies precluded intrapolicy stacking of medical payments coverage, *Tyler v. Nationwide Mutual Insurance Co.*, 101 N.C. App. 713, 401 S.E.2d 80 (1991), and UM coverage, *Hamilton v. Travelers Indemnity Co.*, 77 N.C. App. 318, 335 S.E.2d 228 (1985), *disc. rev. denied*, 315 N.C. 587, 341 S.E.2d 25 (1986). As here, intrapolicy stacking of the coverages at issue in those cases was precluded in those cases by clear and unambiguous policy language limiting the insurer's liability.

Because the Allstate policy before us plainly and unambiguously precludes the aggregation of UM coverages under its policy, plaintiffs' per accident UM coverage under that policy is limited to $50,000.

The Order of the trial court is therefore

Affirmed.

Justice MEYER concurs in the result.

Justices FRYE and LAKE did not participate in the consideration or decision of this case.