UNITED SERVICES AUTOMOBILE ASSOCIATION, PLAINTIFF v. JACK F. GAMBINO AND WILLIAM F. JOHNSON, DEFENDANTS

No. 9310SC294

(Filed 17 May 1994)

1. **Insurance § 528 (NCI4th) — underinsured motorist coverage — stacking — foster child — definition**

   "Foster child," as used in the portion of plaintiff's underinsured motorist policy defining covered "person," means a person whose upbringing, care and support has been provided by someone not related by blood or legal ties and who has reared the person as his or her own child. Plaintiff's contention that "foster child" includes only persons under the age of majority was rejected because it would result in disparate treatment of the same class of insureds.

   **Am Jur 2d, Automobile Insurance § 322.**

UNITED SERVICES AUTOMOBILE ASSN. v. GAMBINO

[114 N.C. App. 701 (1994)]

Who is "member" or "resident" of same "family" or "household," within no-fault or uninsured motorist provisions of motor vehicle insurance policy. 96 ALR2d 804.

2. Insurance § 528 (NCI4th) — underinsured motorist coverage — stacking — foster child — evidence insufficient

The trial court erred by granting summary judgment for defendants in an action to determine whether defendant Jack Gambino was included in defendant Johnson's underinsured motorist coverage where Jack left the home of his father and stepmother in 1987 and lived with the Johnsons until 1988, when he moved into a dormitory at Louisburg College; he returned to the Johnsons' on weekends, holidays and summer recess; the Johnsons provided him with school supplies, lunch money, food, and spending money when he resided in their home; he was allowed to use the family vehicle; he had little or no contact with his father and received no financial support from his father; he was seriously injured in a collision in 1989; the Johnsons purchased medical supplies and equipment for Jack's use while he recuperated in their home; and he continued to live with the Johnsons until he moved to his father's home in 1990. However, the Johnsons assumed no parental responsibilities for Jack until he was approximately seventeen and one-half years old; he was raised and supported by his natural parents, or his natural father and stepmother prior to that time; he maintained a part-time job and earned income which he used to purchase clothing after leaving his father's home; his natural mother sent him money whenever she could; the Johnsons listed their natural child as a driver on their automobile insurance policy but did not list Jack; although the Johnsons purchased supplies and equipment for Jack's recuperation, his stepmother sought payment of his medical expenses under a health insurance policy insuring herself and her dependent children; and Jack moved back to his father's home following his recuperation. The evidence, considered in the light most favorable to plaintiff, creates a jury question as to whether Jack falls within the definition of foster child.

Am Jur 2d, Automobile Insurance § 322.

Who is "member" or "resident" of same "family" or "household," within no-fault or uninsured motorist provisions of motor vehicle insurance policy. 96 ALR2d 804.

UNITED SERVICES AUTOMOBILE ASSN. v. GAMBINO

[114 N.C. App. 701 (1994)]

3. **Insurance § 528 (NCI4th) — automobile insurance — underinsured motorist coverage — stacking — policy language**

The trial court correctly ruled that defendant Jack Gambino is not entitled to aggregate or stack UIM coverage of each of three vehicles insured under one policy where, at the time this action arose, N.C.G.S. § 20-279.21(b)(4) permitted persons insured of the first class to stack coverages; insureds of the first class were defined as the named insured and, while a resident of the same household, the spouse of any named insured and the relatives of either; there was evidence from which a jury could reasonably find Gambino to be a foster child, but a foster child is not a relative and thus is not a person of the first class; and the policy language prohibited intrapolicy stacking.

**Am Jur 2d, Autmobile Insurance §§ 326 et seq.**

**Combining or "stacking" uninsured motorist coverages provided in single policy applicable to different vehicles of individual insured. 23 ALR4th 12.**

4. **Insurance § 690 (NCI4th) — automobile insurance — underinsured motorist coverage — prejudgment interest or costs taxed**

The trial court did not err in an underinsured motorist stacking case by ruling that the policy's UIM benefits do not cover prejudgment interest or costs taxed where the judgment against the tortfeasor far exceeds the maximum amount of UIM coverage provided by the policy, so that the available limits of UIM coverage would be exhausted in satisfaction of the judgment in the underlying tort action and no UIM coverage would be available for payment of prejudgment interest or costs. Moreover, the Supplementary Payments Provision of the policy applies only to the liability portion of the policy and not the UIM Section.

**Am Jur 2d, Automobile Insurance § 428.**

Appeal by plaintiff and defendants from judgment entered 11 February 1993 by Judge Jack A. Thompson in Wake County Superior Court. Heard in the Court of Appeals 13 January 1994.

Plaintiff instituted this action seeking a declaration of the rights of the parties with respect to the existence and amount of underinsured motorist coverage (hereinafter "UIM coverage") provided to

defendant Jack F. Gambino by an insurance policy issued by plaintiff to defendant Johnson. The policy at issue insured three vehicles owned by Johnson and provided UIM coverage of $100,000.00 per person.

Defendant Jack Gambino (hereinafter "Jack") was born in 1970 to Jack J. and Janice Gambino. Jack's parents divorced, his father remarried and, in 1983, moved his family to Raleigh, North Carolina. In November, 1987 Jack left the home of his father and step-mother and began living in the home of defendant William Johnson and his wife, Sheila. While living with the Johnsons, Jack held a part-time job at a local restaurant and completed his high school education, graduating in June, 1988. Following graduation, he continued to live in the Johnsons' household until the fall of 1988 when he enrolled in Louisburg College and moved into a campus dormitory. During the school year, Jack returned to the Johnsons' home on weekends and holidays. At the end of the college school year, Jack returned to Raleigh and lived with the Johnsons during the summer recess. During the times that Jack resided in their home, the Johnsons provided him with school supplies, lunch money, food and spending money. The Johnsons allowed Jack to use the family vehicle when he needed it, subject to its availability. During this time, Jack received no financial support from his father with whom he had little or no contact. Mr. Gambino did not know that Jack graduated from high school or that he was attending college.

On 22 August 1989, after returning to Louisburg to begin his second year of college, Jack was seriously injured when the motorcycle he was riding was involved in a collision with an automobile driven by Samuel Black. Following the accident, Jack's stepmother, Marlene Gambino, submitted claims for Jack's medical expenses under an insurance policy provided to her through her employer. The policy provided coverage for children of the employee who were under the age of 26 and primarily dependent on the employee for financial support. When Jack was released from the hospital, the Johnsons purchased medical supplies and equipment for his use while he recuperated in their home. Jack continued living with the Johnsons until the spring of 1990 when he moved back to his father's home.

Jack thereafter instituted an action against Black to recover damages for the injuries he sustained. Black's automobile liability insurance carrier paid its policy limit of $25,000.00, and plaintiff

defended the case on behalf of Black. On 22 January 1993, a judgment was entered in accordance with a jury verdict in favor of Jack for $325,000.00.

Plaintiff thereafter commenced this action to determine whether, and to what extent, the policy it issued to Mr. Johnson provides Jack with UIM coverage. On cross motions for summary judgment, the trial court entered an order concluding that (1) plaintiff's policy provides UIM coverage to Jack by reason of the policy provision which extends such coverage to a "foster child," (2) the coverage provided is $100,000.00, less $25,000.00 paid by Black's liability insurance carrier, or $75,000.00, (3) Jack is not entitled to aggregate or "stack" the coverage for each of the three vehicles insured by the policy, and (4) the policy does not provide UIM coverage for prejudgment interest or costs taxed in the underlying tort action. All parties appealed.

*Battle, Winslow, Scott & Wiley, P.A., by Sam S. Woodley and M. Greg Crumpler, for plaintiff-appellant.*

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for defendant-appellants.*

MARTIN, Judge.

PLAINTIFF'S APPEAL

[1] Plaintiff contends that the trial court erred by concluding that Jack is a "covered person" under the terms of plaintiff's policy on the ground that he is the Johnsons' "foster child." For the reasons set forth herein, we hold that summary judgment in favor of defendants was improper.

The policy issued by plaintiff provides in pertinent part that it provides UIM coverage to "covered persons." For purposes of UIM coverage, the policy defines "covered person" as "[y]ou or any family member." "Family member" is defined by the policy as "a person related to you by blood, marriage, or adoption who is a resident of your household. This includes a ward or foster child." The policy does not, however define the term "foster child."

When an insurance policy fails to define a nontechnical term, the term is given its ordinary meaning unless the context in which the term is used in the policy requires that it be given a different meaning. *Grant v. Insurance Co.*, 295 N.C. 39, 243 S.E.2d 894 (1978).

In addition, an insurance contract is to be construed as a reasonable person in the position of the insured would have understood it. *W & J Rives, Inc. v. Kemper Insurance Group*, 92 N.C. App. 313, 374 S.E.2d 430 (1988), *disc. review denied*, 324 N.C. 342, 378 S.E.2d 809 (1989). If the language of the policy is ambiguous or reasonably susceptible to different constructions, it must be given the interpretation most favorable to the insured. *Id.*; *Maddox v. Insurance Co.*, 303 N.C. 648, 280 S.E.2d 907 (1981). Applying the foregoing principles, we attempt to ascertain the meaning of the term "foster child" as used in plaintiff's policy.

*The Random House Dictionary of the English Language* 560 (1966) defines the term "foster child" as "a child raised by someone not its own mother or father." *Webster's Third New International Dictionary*, 897 (1976), defines foster (as the first constituent part of the term foster child) as "affording, receiving, or sharing nourishment, upbringing, or parental care though not related by blood or legal ties; as . . . brought up by someone other than one's natural parent . . . ." *Black's Law Dictionary* 656 (6th ed. 1990) defines "foster child" as a "child whose care, comfort, education and upbringing has been left to persons other than his natural parents."

In *Joseph v. Utah Home Fire Ins. Co.*, 313 Or. 323, 329, 835 P.2d 885, 888 (1992), the court defined "foster child" as "a child reared by a person other than its biological or adoptive parent[.]" The court defined a foster parent as "a person who has performed the duties of a parent to the child of another by rearing that child as the foster parent's own." *Id.* The same or similar definitions have been utilized by courts in other jurisdictions. *See, Hayes v. American Standard Ins. Co.*, 847 S.W.2d 150 (Mo. App. S.D. 1993); *Brokenbaugh v. New Jersey Mfrs. Ins. Co.*, 158 N.J.Super. 424, 386 A.2d 433 (1978); *Illinois v. Parris*, 130 Ill. App.2d 933, 267 N.E.2d 39 (1971); *Ellis v. Ellis*, 251 Ark. 431, 472 S.W.2d 703 (1971); *Trotter v. Pollan*, 311 S.W.2d 723 (Tex. Civ. App. 1958); *Cicchino v. Biarsky*, 26 N.J. Misc. 300, 61 A.2d 163 (1948); *In re Norman's Estate*, 209 Minn. 19, 295 N.W. 63 (1940). None of these courts have limited the definition of "foster child" to those situations where a person's "foster child" status was conferred by legal appointment or placement.

Plaintiff argues that the term "foster child" can only apply to a person less than eighteen years of age and that Gambino,

UNITED SERVICES AUTOMOBILE ASSN. v. GAMBINO

[114 N.C. App. 701 (1994)]

who was nineteen at the time of the accident, therefore would not fall within the policy definition of "foster child." We disagree.

First, we believe that the word "child," when used as part of the term "foster child," refers to a sociological relationship between two persons rather than to a person's biological age. Second, under plaintiff's interpretation, a "foster child" would be covered under the policy's UIM provisions only if he or she was under the age of majority. However, under the terms of the policy, a "foster child" is included within the definition of "family member" which is defined as "a person related to you by blood, marriage or adoption who is a resident of your household." Coverage for family members is not restricted to family members below the age of majority. Rather, a family member living in the insured's household would be included under the policy's UIM coverage regardless of his or her age. *See, Harrington v. Stevens,* 334 N.C. 586, 434 S.E.2d 212 (1993). Thus, limiting coverage for foster children to those foster children below the age of eighteen would result in disparate treatment for members of the same class of insureds. We therefore reject plaintiff's contention that "foster child" includes only persons under the age of majority.

We hold that the term "foster child," as used in plaintiff's policy, means a person whose upbringing, care and support has been provided by someone not related by blood or legal ties and who has reared the person as his or her own child. We must now decide whether the trial court erred by entering summary judgment in favor of defendants.

[2] A party is entitled to summary judgment if the pleadings and forecast of evidence before the court, taken in the light most favorable to the non-moving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Speck v. N.C. Dairy Foundation,* 311 N.C. 679, 319 S.E.2d 139 (1984). Plaintiff contends that the evidence before the trial court was sufficient to create a question of fact as to whether Gambino was the Johnsons' "foster child" as herein defined. We agree.

Viewed in the light most favorable to plaintiff, the evidence was insufficient to establish, as a matter of law, that Jack is the Johnsons' foster child. The evidence showed that the Johnsons assumed no parental responsibilities for Jack until he was approximately seventeen and one half years old. Prior to that time, Jack

was reared and supported by his natural parents, or by his natural father and his stepmother. Even after leaving his father's home, Jack maintained a part-time job and earned income which he used to purchase his own clothing. In addition, Jack testified that his natural mother sent him money whenever she could afford to and that during a school year she sent him a total of approximately $500.00.

Other evidence showed that the Johnsons listed their natural child as a driver on their automobile insurance policy, but that Jack was not similarly listed even though he was regularly allowed to drive at least one of the family's vehicles. Although there was evidence that the Johnsons purchased supplies and equipment to facilitate Jack's recuperation, there was also evidence which showed that Jack's stepmother sought payment of his medical expenses under a health insurance policy insuring her and her dependent children. Finally, following his recuperation, in the spring of 1990, Jack moved back to the home of his father.

We believe that this evidence, when considered in the light most favorable to plaintiff, creates a jury question as to whether Jack falls within the definition of a "foster child" as that term is herein defined. Therefore, we hold that the trial court erred by entering summary judgment in favor of defendants.

### DEFENDANTS' APPEAL

[3] Defendants first contend that the trial court erred by ruling that Jack is not entitled to aggregate or stack the UIM coverage for each of the three vehicles insured under the policy. We disagree.

"Language in a policy of insurance is the determining factor in resolving coverage questions unless the language is in conflict with applicable statutory provisions governing such coverage." *Lanning v. Allstate Insurance Co.*, 332 N.C. 309, 312, 420 S.E.2d 180, 182 (1992).

> [W]hen a statute is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute will prevail.

*Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989).

UIM insurance is governed by G.S. § 20-279.21(b)(4). Therefore, we must first look to the statute to determine whether it mandates that Jack, if found to be the Johnsons' foster child, is permitted to stack the UIM coverages for the three vehicles insured by the policy.

At the time this action arose, G.S. § 20-279.21(b)(4) permitted persons insured of the first class to stack UIM coverages, both interpolicy and intrapolicy. *Harrington v. Stevens*, 334 N.C. 586, 434 S.E.2d 212 (1993); *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124 (1992); *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 435 S.E.2d 537 (1993). G.S. § 20-279.21(b)(3) defines insureds of the first class as "the named insured and, while a resident of the same household, the spouse of any named insured and relatives of either[.]"

In the present case, Mr. Johnson was the named insured in the policy issued by plaintiff. Jack, the party seeking to stack the UIM coverages provided by the policy, is not the named insured nor the named insured's spouse. Thus, to be entitled to stack the coverages at issue, Jack must be a "relative" of Mr. Johnson or Mrs. Johnson.

As we held above, there is evidence from which a jury could reasonably find that Jack is the named insured's "foster child." However, a foster child is not a "relative" of the foster parent. The word "relative" as ordinarily understood, means "a person connected with another by blood or affinity." *Webster's Ninth New Collegiate Dictionary*, 994 (1983). "Affinity" means "[r]elationship by marriage." *The American Heritage Dictionary of the English Language*, 22 (1981). Clearly, Jack is not connected to the Johnsons by either blood or marriage. Thus, Jack is not a person insured of the first class as defined by G.S. § 20-279.21(b)(3) and may not take advantage of the stacking provisions in G.S. § 20-279.21(b)(4).

Jack's right to aggregate the UIM benefits of plaintiff's policy, where stacking is not mandated by the applicable statutory provision, must therefore be found, if at all, in the language of plaintiff's policy. Plaintiff's policy provides in pertinent part: ·

> The limit of bodily injury liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident . . . .

This is the most we will pay for bodily injury and property damage regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

Plaintiff contends that this policy language prohibits intrapolicy stacking of UIM coverages. We agree.

In *Lanning, supra,* the Supreme Court reviewed policy language virtually identical to the foregoing language from plaintiff's policy and held that it unambiguously prohibited stacking of the uninsured motorists benefits. Thus, we hold that the trial court correctly ruled that the language of the policy prohibits aggregation of the UIM benefits for the Johnsons' three vehicles. Therefore, the UIM benefits available to Jack, in the event he is found to be a foster child, amount to $100,000.00 reduced by the $25,000.00 paid by the tortfeasor's liability insurer.

[4] Next, defendants contend that the trial court erred by ruling that the policy's UIM benefits do not cover prejudgment interest or costs taxed. This issue was recently addressed in *Baxley v. Nationwide Mutual Ins. Co.,* 334 N.C. 1, 430 S.E.2d 895 (1993) and *Wiggins v. Nationwide Mutual Ins. Co.,* 112 N.C. App. 26, 434 S.E.2d 642 (1993). The policy in the present case, like the policies at issue in *Baxley* and *Wiggins,* provides that the insurer promises to pay, up to its UIM policy limit,

damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:

1. Bodily injury sustained by a covered person and caused by an accident; and

2. Property damage caused by an accident.

The decisions in *Baxley* and *Wiggins* interpreted this language, as obligating the insurer to pay prejudgment interest and costs *up to* its UIM policy limits. *Baxley* at 9, 430 S.E.2d at 898-899.

In the present case, Jack obtained a judgment against the tortfeasor for $325,000.00. This amount far exceeds $75,000.00, the

**BROOKS v. ANSCO & ASSOCIATES**

[114 N.C. App. 711 (1994)]

maximum amount of UIM coverage provided by the policy. In the event that Jack is determined to be covered by the UIM provisions of the policy, the available limits of the UIM coverage would be exhausted in satisfaction of the judgment in the underlying tort action. Thus, under *Baxley* and *Wiggins*, no UIM coverage would be available for payment of prejudgment interest or costs.

We also reject defendants' contention that plaintiff is obligated to pay prejudgment interest by virtue of the policy's Supplementary Payments Provision. This portion of plaintiff's policy provides that plaintiff will pay "interest accruing after any suit we defend is instituted." However, this provision applies only to the *liability* portion of the policy and we find no similar provision in the UIM section of the policy. Therefore, we affirm the trial court's ruling that plaintiff's policy provides no UIM coverage for prejudgment interest or costs taxed in the underlying tort action.

In summary, we hold that, (1) the issue of Jack's status as a "foster child," as defined herein, is a question of fact for determination by a jury; (2) if Jack is a "covered person" for purposes of UIM coverage, he is not entitled to aggregate the applicable UIM benefits, and (3) plaintiff's policy does not provide UIM coverage for prejudgment interest or costs taxed in the underlying tort action.

Affirmed in part; reversed in part.

Chief Judge ARNOLD and Judge WYNN concur.