DELLA D. BAXLEY v. NATIONWIDE MUTUAL INSURANCE CO.

---

DELLA D. BAXLEY v. NATIONWIDE MUTUAL INSURANCE CO.

No. 538PA91
No. 226PA92

(Filed 2 July 1993)

### 1. Insurance § 690 (NCI4th) — prejudgment interest — liability of UIM carrier

An underinsured motorist carrier is obligated by the terms of the policy to pay prejudgment interest on the compensatory damages award of the jury in the underlying tort action by its insured against the tortfeasor up to its policy limits where the policy obligates the underinsured motorist carrier to pay "damages" which a covered person is legally entitled to recover from an underinsured motorist because of bodily injury or property damage, since prejudgment interest is an element of "damages" as that term is used in the underinsured motorist portion of the policy.

**Am Jur 2d, Automobile Insurance § 428.**

1

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

2. **Insurance § 530 (NCI4th) — UIM coverage — no credit for medical payments**

An underinsured motorist carrier was not entitled by the terms of the policy to a credit under the underinsured motorist coverage section for a payment it made to its insured under the medical payments section of the policy where plaintiff insured paid separate premiums for the medical payments and underinsured motorist coverages and each has a separate limit of liability; there is no provision in the policy to the effect that a payment made under the medical payments section shall reduce the carrier's obligation under the underinsured motorist section; the "credit" section of the policy does not provide for credit to the carrier for payments made under the medical payments section; and an endorsement to the policy provides that the right of subrogation does not apply under the medical payments section. Furthermore, plaintiff insured is not prohibited from recovering under both the medical payments and underinsured motorist sections of the policy on the grounds of unjust enrichment or equitable subrogation since those defenses do not apply where the insurance contract itself provides for recovery under both the medical payments and underinsured motorist sections and waives any right to subrogation.

**Am Jur 2d, Automobile Insurance § 322.**

**Uninsured motorist insurance: Reduction of coverage by amounts payable under medical expense insurance. 24 ALR3d 1353.**

Justice MEYER dissenting.

Justice PARKER did not participate in the consideration or decision of these cases.

Case Number 538PA91 on discretionary review of a decision of the Court of Appeals, 104 N.C. App. 419, 410 S.E.2d 12 (1991), reversing the judgment entered by Brewer, J., at the 8 June 1991 Session of Superior Court, Robeson County. Discretionary review allowed 4 March 1992. Heard in the Supreme Court 9 September 1992.

Case Number 226PA92 on discretionary review prior to determination by the Court of Appeals of the superseding judgment entered by Gore, J., on 11 May 1992, after a hearing at the 6

## BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

April 1992 Session of Superior Court, Robeson County. Discretionary review prior to determination was denied 16 July 1992, then allowed by supplemental order 24 November 1992 and consolidated for decision with case number 538PA91. Case number 226PA91 determined in the Supreme Court upon briefs filed with the Court of Appeals and without oral argument.

*H. Mitchell Baker, III, P.A., by H. Mitchell Baker, and Brent D. Kiziah for plaintiff-appellee.*

*LeBoeuf, Lamb, Leiby & MacRae, by Peter M. Foley and Peter A. Kolbe, for defendant-appellant.*

FRYE, Justice.

This case involves two issues. The first issue is whether the underinsured motorist (UIM) carrier in this case is obligated to pay prejudgment interest on the compensatory damages award of the jury in the underlying tort action by its insured against the tort-feasor. We conclude that the UIM carrier is obligated to pay prejudgment interest on the award up to its policy limits. The second issue is whether the UIM carrier is entitled to a credit under the UIM coverage section for a payment it made to its insured under the medical payments section of the insurance contract. We hold that under the terms of the policy the UIM carrier is not entitled to a credit for such payments.

On 17 January 1987, the automobile in which plaintiff, Ms. Della Baxley, was a passenger was struck by a vehicle driven by Ms. Anita Brown. Plaintiff suffered bodily injuries and incurred medical bills that have been stipulated to be in excess of $10,000. At the time of the accident, Allstate Insurance Company (Allstate) provided liability coverage for Ms. Brown in the amount of $25,000 per person. Defendant, Nationwide Insurance Company (Nationwide), provided plaintiff with UIM coverage in the amount of $100,000 per person and medical payments coverage up to $10,000.

On 22 August 1987, plaintiff filed a negligence action against the tort-feasor, Brown, seeking damages for the personal injuries plaintiff suffered in the automobile accident. On 11 September 1987, pursuant to the medical payments provision of plaintiff's policy issued by defendant Nationwide, plaintiff received from Nationwide the maximum medical payment of $10,000. Allstate paid $25,000, the policy limit under Brown's policy, to the clerk of court. In

order to preserve its subrogation rights against Brown, Nationwide tendered $25,000, which was deposited with the clerk of court on 12 February 1988.

On 15 August 1988, Judge Robert H. Hobgood entered an order whereby Allstate, the liability carrier, and its attorney were released from any further obligation to defend Brown in the lawsuit between Baxley and Brown. Nationwide, plaintiff's UIM carrier, retained counsel for defendant Brown and assumed primary responsibility for her defense.

On 22 August 1988, the underlying negligence action between plaintiff and Brown proceeded to trial. The jury returned a compensatory damage verdict in favor of plaintiff in the amount of $100,000. On 14 September 1988, a judgment was entered against Brown for that amount plus costs and prejudgment interest from the date of the filing of the complaint, 20 August 1987, but excluding interest on the $25,000 that was tendered by Nationwide on 12 February 1988. On 13 December 1988, Nationwide, as plaintiff's UIM carrier, paid plaintiff an additional $65,000. Following the trial, the $25,000 that was paid by Allstate to the clerk of court was paid to Nationwide.

Plaintiff then filed a declaratory judgment action against Nationwide seeking a determination as to whether Nationwide was entitled to a credit against its UIM coverage limit for the $10,000 payment made under its medical payments coverage. Plaintiff also sought to have the court determine whether Nationwide, her UIM carrier, or Allstate, the tort-feasor's primary liability carrier, was liable to plaintiff for court costs, including prejudgment interest, in the original action.

On 8 June 1990, Superior Court Judge Coy E. Brewer entered the following judgment:

1. That there was a contract obligation between Plaintiff and Defendant Nationwide Mutual Insurance Company regarding medical payment coverage and that, since there was not [a] special jury verdict at the trial level regarding compensation for medical expenses incurred by the Plaintiff, Defendant Nationwide Mutual Insurance Company is not entitled to a credit for the medical payment made to Plaintiff under its underinsured motorist coverage. Therefore, Defendant Nationwide Mutual Insurance Company is obligated to pay an additional $10,000 to Plaintiff.

2. Defendant Nationwide Mutual Insurance Company as the underinsured motorist carrier, is not obligated to pay any portion of the interest awarded to Plaintiff Della D. Baxley against Anita Brown . . . because the obligation fails [sic] on the primary carrier, Allstate Insurance Company, and the original defendant, Anita Brown.

Plaintiff and defendant appealed to the Court of Appeals from the judgment.

On the issue of prejudgment interest, the Court of Appeals held:

Here, as in *Ensley* [v. Nationwide Mut. Ins. Co., 80 N.C. App. 512, 342 S.E.2d 567, *cert. denied*, 318 N.C. 414, 349 S.E.2d 594 (1986)], coverage is provided for *damages which the plaintiff is legally entitled to recover* from the owner or operator of the uninsured motor vehicle, and the plaintiff's claim is based in tort, despite the fact that recovery is derivative and conditional. The defendant assumed up to its policy limits the liability of the uninsured motorist for damages which the plaintiff is legally entitled to recover from the uninsured motorist. *Ensley*, 80 N.C. App. at 515, 342 S.E.2d at 569.

*Baxley v. Nationwide Mut. Ins. Co.*, 104 N.C. App. at 424-25, 410 S.E.2d at 15. The Court of Appeals remanded the case to the superior court to apply the prejudgment interest provisions of N.C.G.S. § 24-5(b) to the $65,000 paid by Nationwide on 13 December 1988. Regarding the credit issue, the Court of Appeals observed that in the record on appeal the parties stipulated that the $10,000 medical expenses incurred by plaintiff and paid by Nationwide were reasonable, were proximately caused by Brown and were specifically included on a dollar for dollar basis in the judgment of $100,000 in the tort action. The Court of Appeals held that the parties may stipulate to such facts and that plaintiff is therefore bound by that stipulation. *Id.* at 422, 410 S.E.2d at 14.

On 4 March 1992, this Court allowed Nationwide's petition for discretionary review of the prejudgment interest issue. The issue regarding credit for the medical payments coverage that was remanded was heard before Judge William C. Gore, Jr., at the 6 April 1992 session of Civil Superior Court, Robeson County. The court entered judgment on 20 April 1992. On 11 May 1992 the trial court entered a superseding judgment, holding that Nationwide was not entitled to a credit for the payment made

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

under the medical payments section of the policy. Nationwide appealed to the Court of Appeals. Plaintiff petitioned this Court for discretionary review prior to determination by the Court of Appeals. Plaintiff's petition was denied on 16 July 1992, then allowed by supplemental order on 24 November 1992. The supplemental order consolidated the two issues for decision and both are now before us. We note that the issue of Allstate's liability for prejudgment interest as the liability carrier is not before us.

I.

[1] We first consider the prejudgment interest issue. It has been established by this Court that when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute prevail. *Sutton v. Aetna Cas. & Surety Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989).

N.C.G.S. § 20-279.21, which defines "motor vehicle liability policy," is silent on the issue of prejudgment interest. We have previously held that the prejudgment interest statute, N.C.G.S. § 24-5, is not a part of the Financial Responsibility Act so as to be written into every liability policy. *Sproles v. Greene*, 329 N.C. 603, 613, 407 S.E.2d 497, 503 (1991). In so holding, we observed that, in the absence of a statutory provision, a liability insurer's obligation to pay interest *in addition* to its policy limits is governed by the language of the policy. *Id.* at 612-13, 407 S.E.2d at 502-03. This case is different in that the question raised by the parties is whether the UIM carrier, Nationwide, is obligated to pay prejudgment interest *up to* its policy limits. We hold that under the terms of its policy it is so obligated. Because we find that the policy itself provides for such coverage, we do not reach the issue of whether the Financial Responsibility Act itself mandates such coverage within the policy limit.

The contractual language that supports our holding is Nationwide's promise to pay, up to its UIM policy limit,

damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:

1. Bodily injury sustained by a covered person and caused by an accident; and

2. Property damage caused by an accident.

In interpreting this language we must determine what "damages" the insured is "legally entitled to recover" from the tort-feasor because of bodily injury.

We believe the insured is *legally entitled to recover* the total amount of money that the judgment says she is entitled to recover from the tort-feasor. In this case, the judgment awarded the insured $100,000 in compensatory damages *and* prejudgment interest on $75,000. Nationwide has promised to pay the insured all the "damages" awarded to her, up to its policy limit. The parties admit that the insurance contract does not define "damages." Thus, we must determine what is meant by that word as it is used in the UIM section of this contract of insurance.

Nationwide does not argue that it has contractually limited the definition of damages to mean only the compensatory damage amount awarded by the jury. Where the insurance contract does not limit the definition of the word, this Court certainly should not step in to do so. Any ambiguity in the contract must, in fact, be construed against Nationwide, the drafter of the contract. *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 295, 378 S.E.2d 21, 25 (1989).

Black's Law Dictionary defines "damages" as: "A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered . . . injury . . . through the . . . negligence of another." *Black's Law Dictionary* 389 (6th ed. 1990). Here plaintiff-insured has obtained a judgment in a negligence case against the tort-feasor which includes prejudgment interest. The UIM carrier has agreed to pay the insured the "damages" she is legally entitled to recover from the tort-feasor as a result of bodily injury. Plaintiff is entitled to recover the prejudgment interest from the tort-feasor but is unable to do so since the tort-feasor is underinsured. Thus, the UIM carrier must step in to pay the insured these damages up to its policy limits.

Prejudgment interest in negligence cases is a statutory creature in this state. Thus, in determining whether it is an element of the damages suffered by a plaintiff, we must also look to the specific statute allowing prejudgment interest. N.C.G.S. § 24-5 provides, in part, that:

(b) In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

N.C.G.S. § 24-5(b) (1991).

In an early case discussing a previous version of this statute, section 530 of the Code, this Court discussed how it changed the common law. "At common law a judgment did not carry interest when an execution or *sci. fa.* was issued upon it. In an action upon the judgment the plaintiff could recover interest **by way of damages** for the detention of the money." *McNeill v. R.R.*, 138 N.C. 1, 3, 50 S.E. 458, 459 (1905) (emphasis added). More recently, this Court has acknowledged that prejudgment interest may reasonably serve "to further important and legitimate public purposes, including compensation of a plaintiff for loss-of-use value of a damage award." *Lowe v. Tarble*, 312 N.C. 467, 472, 323 S.E.2d 19, 22 (1984), *aff'd on reh'g*, 313 N.C. 460, 329 S.E.2d 648 (1985). The United States District Court for the Eastern District of North Carolina, interpreting N.C.G.S. § 24-5, has reached the conclusion that prejudgment interest is an element of compensatory damages. *See Hartford Acc. & Indem. Co. v. U.S. Fire Ins. Co.*, 710 F.Supp. 164, 167 (E.D.N.C. 1989), *aff'd*, 918 F.2d 955 (4th Cir. 1990) ("[T]he award of **pre-judgment interest** in this case is **clearly an element of damages.** Clearly the purpose of the award is to compensate a worthy plaintiff for the loss of the use of money that he or she has incurred due to the wrongful acts of another party."). We conclude that interest paid to compensate a plaintiff for loss-of-use of the money during the pendency of a lawsuit is an element of that plaintiff's damages.

Even if it is not clear from a reading of § 24-5(b) alone that the legislature intended prejudgment interest to be treated as an element of compensatory damages, such an intent is revealed if one reads further in Chapter 24. For example, N.C.G.S. § 24-6 provides that upon certain default judgments, "the clerk of the court shall ascertain the interest due by law . . . and the amount shall be included in the final judgment of the court *as damages* which judgment shall be rendered therein in the manner prescribed by § 24-5." *Id.* (emphasis added). This provision allows the clerk to assess the amount of interest to which the plaintiff is entitled

## BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

"as damages" where the principal obligation to be paid is not in question. This Court has recognized that N.C.G.S. § 24-5(a) authorizes interest from the date of a breach of contract "in the nature of damages for the retention of the principal of the debt." *Craftique, Inc. v. Stevens and Co., Inc.*, 321 N.C. 564, 568, 364 S.E.2d 129, 132 (1988). Where a jury determines the amount to which a plaintiff in a tort action is entitled, the statutorily imposed prejudgment interest is likewise at least "in the nature of damages." In both instances the plaintiff has been deprived of the use of funds to which plaintiff was entitled from the time of the injury resulting from the wrong giving rise to the claim for relief. The prejudgment interest statute merely recognizes this entitlement and provides for its recovery (in the case of a tort) from the date the plaintiff judicially demands payment by filing suit.

Requiring the UIM carrier to pay prejudgment interest up to its policy limit is not a harsh result since the UIM carrier has had the opportunity to invest the money during the pendency of the suit. In addition, it is within the UIM carrier's power to stop the accrual of prejudgment interest by offering (or posting) its policy limit.

In this case, Nationwide, plaintiff's UIM carrier, retained counsel who assumed primary responsibility for the defense of the tort-feasor. Now Nationwide is responsible, up to its policy coverage limit, for the amount of damage it caused plaintiff by delaying the payment due under its UIM coverage. *See* John Alan Appleman, *Insurance Law and Practice* § 4894.25, at 97 (1981) ("[I]t is unfair and misleading for the insurer to fail to cover any liability of the insured for [prejudgment] interest for two reasons: First, it had prepared the instrument . . . which purports to restrict its liability, and by its terms introduced a retention factor never contemplated by the insured; Second, it controls the litigation and permitted interest to accrue which could not have accumulated had the claim been settled prior to litigation. Unless the insurer is held to such responsibility, the policyholder, in effect, retains a deductible never contemplated by him.").

We note that our decision is in accord with the position taken by a majority of other jurisdictions. At least two states have held that an insurer is liable for prejudgment interest *in excess of its limit* of liability in absence of an express policy provision to the contrary. *See Burton v. Foret*, 498 So.2d 706 (La. 1986); *Matich*

*v. Modern Research Corp.*, 430 Mich. 1, 420 N.W.2d 67 (1988). However, most courts have held that prejudgment interest is an element of damages and, as such, it is added to the verdict and the entire amount is paid by the insurer under the coverage portion of the policy up to the policy limits. *See Houselog v. Milwaukee Guardian Ins.*, 473 N.W.2d 52, 55 (Iowa 1991) (Supreme Court of Iowa held that "prejudgment interest on judgment for damages against tort-feasor was included in underinsurance coverage for damages 'for bodily injury' or 'because of bodily injury' "); *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990) (Colorado Supreme Court noted that "[t]he overwhelming majority of other jurisdictions . . . likewise hold that prejudgment interest is an element of compensatory damages, thus limiting an insurer's liability for prejudgment interest to the policy's damages coverage"); *Factory Mut. Liability Ins. Co. of America v. Cooper*, 106 R.I. 632, 637, 262 A.2d 370, 373 (R.I. 1970) (Rhode Island Supreme Court held that an insurer's promise to pay "all sums which the insured shall become legally obligated to pay as damages" because of bodily injury encompassed statutorily imposed prejudgment interest up to the policy limit); *Guin v. Ha*, 591 P.2d 1281 (Alaska 1979) (Alaska Supreme Court based its ultimate holding on recognition that prejudgment interest is an element of compensatory damages); *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 354, 766 P.2d 1227, 1235 (Idaho 1988) (Because UIM carrier contracted to insure plaintiff for "all injuries and losses suffered at the hands of an underinsured tort-feasor," the UIM carrier is liable for prejudgment interest on a jury award within the policy limit).

Nationwide argues that the reference to prejudgment interest in the supplementary payments provision under the liability section of the policy would be superfluous if interest is included in the term "damages" as used in the UIM section of the policy. However, the specific provision in the liability section of the Allstate and Nationwide policies requiring payment of prejudgment interest is not rendered superfluous by our holding because the supplemental payments provision requires payment of prejudgment interest *in excess* of the stated liability limits. The supplementary payments provision therefore seems to obligate the liability carrier to pay prejudgment interest *in addition to* its policy limit, with its duty to pay interest ending only when the liability insurer pays its part of the judgment within its limit of liability coverage. As an obligation to pay *more* than the liability coverage limit, this specific

prejudgment interest provision is not rendered "superfluous" by a finding that prejudgment interest is also an element of a plaintiff's damages (i.e., payable up to the coverage limit).

Next, Nationwide looks to *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985), for support. However, *Lowe* does not answer the question raised in this case. *Lowe* dealt with a supplementary payments provision in the liability section of a policy in which the insurer agreed to pay "*all* costs" taxed against the insured "*in addition to* the applicable limit" of the policy. *Lowe*, 313 N.C. at 463, 329 S.E.2d at 651 (emphasis added). The Court held that "under the contract in the present case" prejudgment interest is a cost included in that obligation.[1] *Id.*

We also note that Nationwide's reliance on *Aames v. Commissioner*, 94 T.C. 189 (1990), is misplaced. Not only are our decisions not controlled by decisions of the United States Tax Court, but the issue before that court was far different from the issue now before us. That decision concerned only the *taxability* of prejudgment interest. Even so, the decision itself notes that "[b]y statute [in Massachusetts], plaintiffs are now **entitled to interest as an item of damages**." *Id.* (Emphasis added.)

For the above-stated reasons, we hold that prejudgment interest on the jury verdict in the underlying tort action is included within the term "damages" as that term is used in the UIM portion of the plaintiff's policy. Since Nationwide promised to pay plaintiff's resulting damages, it must now do so, up to, but not in excess of, its UIM policy limits.

## II.

[2] We turn now to the issue of whether Nationwide is entitled to a credit of $10,000 against its UIM coverage limit for the payment made under the medical payments provision of plaintiff's policy. We observe initially that Nationwide has paid plaintiff a total of $90,000 under the UIM section of its policy. The limit of liability under the UIM section is $100,000. In addition to the UIM pay-

---

1. In addressing the argument that *Lowe* supported a finding that prejudgment interest was an item of "costs" and not "damages," the United States District Court for the Eastern District of North Carolina noted that "the facts and issues in the present case are different from the facts in *Lowe* to a sufficient degree as to justify a contrary holding." *Hartford Acc. & Indem. Co.*, 710 F. Supp. at 167. We believe the same holds true here.

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

ment, Nationwide has paid plaintiff $10,000 under the medical payments section of its policy. If it is entitled to a credit on its UIM payments for this $10,000 payment, Nationwide will be deemed to have paid $100,000 under its UIM coverage. If it is not entitled to a credit, then $10,000 of UIM coverage remains.

The Court of Appeals addressed this issue by holding that the parties are bound by their stipulations in the record on appeal. *Baxley*, 104 N.C. App. at 422, 410 S.E.2d at 14. On remand, the trial judge admitted confusion as to the proper application of the Court of Appeals' holding. The trial judge noted in the superseding order that at a hearing on the matter held on 7 May 1992 the parties stipulated that the stipulation in the record on appeal was "for the purpose of bringing before the Court of Appeals the issue of whether an underinsured motorist carrier is entitled to receive a credit for payments made under its Medical Payments coverage." Since the issue did not appear to be fully resolved by the Court of Appeals' holding, the trial court assumed that "the remand was for this Court [the trial court] to decide whether an underinsured motorist carrier is entitled to credit for payment under its Medical Payments coverage." The trial judge then concluded from the file that:

> the parties contemplated the situation wherein a person receiving compensation of the medical payments coverage of the contract might also receive payment from one or more additional sources. The Court also concludes as a matter of law that Defendant, Nationwide Mutual Insurance Company, in clear and unequivocal terms waived its right of subrogation. Further, from review of the policy, it appears that Plaintiff paid to Defendant, Nationwide Mutual Insurance Company, separate premiums for the Medical Payments Coverage and is, accordingly allowed under the Collateral Source Rule to recover under both. The Court, therefore, concludes that Defendant, Nationwide Mutual Insurance Company, as the Underinsured Motorist carrier for the Plaintiff, is not entitled to credit for payments made under its Medical Payments Coverage.

We agree with the trial court and hold that Nationwide is not entitled to a $10,000 credit against its UIM coverage limit for the amount paid under the medical payments provision.

In *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 243 S.E.2d 894 (1978), we held that "[w]here there is no ambiguity in the language used

in the [insurance] policy, the courts must enforce the contract as the parties have made it." *Id.* at 43, 243 S.E.2d at 897.

In this case the policy provides for coverage under the medical payments section and such payment was made. The policy also provides for separate coverage under the UIM section of the policy. Nowhere in the policy is there any provision to the effect that a payment made under the medical payments section shall reduce Nationwide's obligation under the UIM section. In fact, plaintiff paid separate premiums for the medical payments and UIM coverages and each had a separate limit of liability.

Part C of the policy in this case provides for payment of medical expenses incurred by the insured as a result of an accident up to the limit of liability ($10,000). Part D of the policy, the UIM coverage section, provides that:

> Any amount otherwise payable for damages under this coverage shall be reduced by all sums:
>
> > 1. Paid because of the bodily injury . . . by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part B.

As noted above, the $10,000 payment made by Nationwide to plaintiff was under Part C of the policy for medical bills incurred by plaintiff as a result of the accident. No payments were made by Nationwide to plaintiff under Part B of the policy, the liability coverage section. Thus, the "credit" section in Part D of the policy, quoted above, does not provide for credit to Nationwide for payments made under Part C of the policy. In addition, an endorsement to the policy amends Nationwide's right to subrogation by stating that the "Right to Recover Payment" section does not apply under Part C, the medical payments section.

Nationwide does not argue that it is entitled to credit or subrogation under any specific provision of the policy. Rather, Nationwide contends that plaintiff is prohibited from recovering under both the medical payments and UIM sections of the policy on the grounds of unjust enrichment and equitable subrogation. Defendant first relies on *Moore v. Beacon Ins. Co.*, 54 N.C. App. 669, 670-71, 284 S.E.2d 136, 138 (1981), *disc. rev. denied*, 305 N.C. 301, 291 S.E.2d 150 (1982), for the proposition that plaintiff would be unjustly enriched by recovery under both sections. Defendant then argues that this Court has expressed a reluctance to allow compensation in excess

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

of a claimant's actual loss, citing *Tart v. Register*, 257 N.C. 161, 125 S.E.2d 754 (1962). Lastly, defendant argues that the doctrine of equitable subrogation precludes double recovery in this case.

We are not persuaded by defendant's arguments. The defenses raised by defendant have no merit where, as here, the contract itself provides for recovery under both the medical payments and the UIM sections and waives any right to subrogation. *See Allis v. Nationwide Mut. Ins. Co.*, 88 N.C. App. 595, 363 S.E.2d 880 (1988) (UIM section of policy did not provide for coverage to be reduced by sums paid out under the section dealing with medical payments); *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 378 S.E.2d 21 (1989) (insurance company waived its right to subrogation under the terms of the insurance contract). In addition, *Tart* is not controlling because the Court in that case did not have the provisions of the policy before it for review. *Tart*, 257 N.C. at 174, 125 S.E.2d at 763. We do have the policy before us in this case and are thus better able to determine what was within the contemplation of the contracting parties. The policy clearly does not provide for credit or subrogation on these facts. We hold that Nationwide is not entitled to a credit against its UIM coverage limit for the $10,000 it paid plaintiff under the medical payments section of the policy.

We therefore affirm both the Court of Appeals' decision regarding the payment of prejudgment interest and the trial court's judgment regarding the credit issue. ·

Case Number 538PA91—AFFIRMED.

Case Number 226PA92—AFFIRMED.

Justice PARKER did not participate in the consideration or decision of these cases.

Justice MEYER dissenting.

Believing that the majority has erred on both issues it addresses, I respectfully dissent.

The majority clearly concedes (1) that N.C.G.S. § 20-279.21, which defines "motor vehicle liability policy," is silent as to the issue of prejudgment interest; and (2) that the prejudgment interest statute, N.C.G.S. § 24-5, is not a part of the Financial Responsibility

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

Act and thus is not written into the policy in question.[1] It follows that any obligation of Nationwide to pay prejudgment interest is governed entirely by, and only by, its contract of insurance with its insured.

The majority concludes that Nationwide's obligation under its UIM coverage to pay "damages" that its insured is entitled to recover from the tort-feasor includes prejudgment interest. I disagree.

Part D of the Nationwide policy, as well as a subsequent endorsement, both pertaining to uninsured/underinsured motorists' coverage, provide that Nationwide

> will pay <u>damages</u> which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle <u>because of</u>:
>
> 1. <u>Bodily injury</u> sustained by a covered person and caused by an accident; and
>
> 2. <u>Property damage</u> caused by an accident.

(Emphasis added.) Under the plain language of the UIM coverage provisions, Nationwide's obligation is limited to paying damages suffered by reason of bodily injury and property damage. Interest cannot be said to arise from bodily injury or property damage. No supplemental payment provisions are found under Part D of the policy. Thus, Part D of plaintiff's policy constituting uninsured/underinsured coverage clearly does not contain any provision requiring Nationwide to pay the costs of interest or defense costs.

The issue of whether prejudgment interest is included in the term "damages" has been examined by the United States Tax Court in *Aames v. Commissioner*, 94 T.C. 189 (1990). Though Tax Court decisions are, of course, not binding on this Court, the reasoning of those decisions can be informative and sometimes persuasive. Section 104(a)(2) of the Tax Code excludes from gross income "the amount of any damages received . . . on account of personal injuries

---

1. While acknowledging that N.C.G.S. § 24-5 is not a part of our Financial Responsibility Act and thus is not read into automobile insurance policies, it nevertheless spends several pages analyzing the provisions of that statute and the cases that interpret it in order to arrive at its conclusion that interest is to be treated as an element of compensatory damages.

BAXLEY v. NATIONWIDE MUTUAL INS. CO.

[334 N.C. 1 (1993)]

or sickness." 26 U.S.C.S. § 104(a)(2) (Law. Co-op. Supp. 1992). In that case, Mr. Aames did not report the prejudgment interest awarded to him in a malpractice action, asserting the provisions of section 104. The Tax Court held that the prejudgment interest was taxable and did not come within the term "damages" under section 104. *Aames*, 94 T.C. at 189. The Tax Court noted that a statute in the taxpayer's state of Massachusetts entitled him to "interest as an item of damages," *id.* at 192, but nevertheless held that it was not " 'damages received . . . on account of personal injuries,' " *id.* at 192 (quoting 26 U.S.C.S. § 104(a)(2) ). This is virtually the same as the language of Nationwide's policy here.

If the contract relating to UIM coverage was intended to cover prejudgment interest, it would have included language well known and customarily used in contracts of insurance to accomplish that purpose. For instance, Part B of the Nationwide policy here, which deals with liability coverage, in an amendatory endorsement (which, incidentally, is identical to the liability portion of Brown's Allstate policy in the underlying tort action), contains a supplementary payments provision which provides that:

> In addition to our limit of liability, we will pay on behalf of a covered person:
>
> . . . .
>
> 3. Interest accruing after any suit we defend is instituted. Our duty to pay interest ends when we pay our part of the judgment which does not exceed our limit of liability for this coverage.

Thus, under the supplementary payments provisions of the liability insurance section of the Nationwide policy promising to pay benefits in addition to the stated policy limits, there is a specific reference to "interest accruing after any suit . . . is instituted" (prejudgment interest). This is the type of language employed when the intent is to pay prejudgment interest. I believe the majority errs in finding such an intent within a promise to pay "damages," a very nonspecific term at best.

The majority should adhere in this case to the well-established rule that in interpreting policies of insurance, "courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term [here, the term "damages"], rewrite the contract

or impose liabilities on the parties not bargained for and found therein." *Woods*, 295 N.C. at 506, 246 S.E.2d at 777 (emphasis added). Here, the language of plaintiff's UIM policy did not obligate Nationwide to pay prejudgment interest on the judgment in the underlying tort action.

The trial judge was correct in saying in the judgment that the payment of prejudgment interest falls on defendant Brown and her liability carrier. Brown paid premiums to her liability carrier to pay compensatory damages up to its policy limits and, in addition thereto, to provide a defense, to pay defense costs and interest on the judgment. Our statute, allowing a liability carrier to pay its liability coverage into court and be released, was never intended to release that carrier from its obligation to pay interest on the judgment taken against its insured, if doing so means placing that burden on the injured party's UIM carrier. The premium for coverage of the interest was paid by the tort-feasor to her own liability carrier. If that expense is borne by the injured party's UIM carrier, the tort-feasor loses the benefit of her bargaining with her liability carrier.

I also believe that the majority has erred in not allowing a credit for Nationwide's previous payment of $10,000 under its medical payments coverage. First, the majority makes much of the fact that separate premiums were paid for the medical payments coverage. The separate premiums were paid, *inter alia*, for coverage of medical expenses even in the event they result from situations where the insured person has no liability for the event that caused them to be incurred. The fact that separate premiums were paid does not dictate that the contracting parties contemplated double payment of medical expenses to the extent of the medical payments coverage.

Second, and most important, the majority has completely overlooked the contract language relating to the limit of liability under the UIM coverage as it appears in "Part D Uninsured Motorists Coverage" of the Nationwide policy. The pertinent provision is as follows:

LIMIT OF LIABILITY

The limit of bodily injury liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our

maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. . . .

. . . .

Any amount otherwise payable for damages under this [uninsured] coverage shall be reduced by all sums:

> 1. Paid because of the bodily injury . . . by or on behalf of persons or organizations who may be legally responsible.

(Emphasis added.) This provision contemplates a credit against amounts due under the UIM coverages for any amount previously paid "for bodily injury" by Nationwide under its medical payments coverage. Such payments were paid by Nationwide "on behalf of" the tort-feasor because the tort-feasor's coverage had been exhausted.

I vote to reverse the decision of the Court of Appeals and remand the case to that court for further remand to the Superior Court, Robeson County, for the entry of judgment as originally entered with regard to Nationwide's liability for prejudgment interest and allowing Nationwide a credit for the $10,000 it previously paid plaintiff under its medical payment coverage.